In the Matter of the Application of the METROPOLITAN LIFE INSURANCE COMPANY, Petitioner, for a Certiorari Order against JAMES A. BEHA (ALBERT CONWAY), as Superintendent of Insurance, Respondent.

Third Department June 21, 1929.

*Leroy A. Lincoln [Frederic G. Dunham* of counsel], for the petitioner.

*Hamilton Ward, Attorney-General [Thomas Penney, Jr., First Assistant Attorney-General,* and *Joseph C. H. Flynn, Deputy Assistant Attorney-General,* of counsel], for the respondent.

VAN KIRK, P. J. The petition runs against James A. Beha, as Superintendent of Insurance. The present Superintendent is Albert Conway and his name should be substituted for that of James A. Beha. The court takes judicial notice of succeeding changes among State officials. (See *Matter of Clement [Hunt Certificate],* 132 App. Div. 598, 600.)

The petitioner asks the Superintendent of Insurance for his official approval of a rider which it desires to attach to its standard form of life insurance policy. The rider is in the following form:

" Death as a result of service, travel or flight in any species of air craft, except as a fare-paying passenger, is a risk not assumed under this policy; but, if the insured shall die as a result, directly or indirectly, of such service, travel or flight, the company will pay to the beneficiary the reserve on this policy."

The Superintendent refused his approval on the ground that it is in conflict with, and forbidden by, subdivision 2 of section 101 of the Insurance Law, known as the " incontestable clause." Was his refusal justified?

The question here does not arise upon a contest between an insurer and its insured; it looks into the future only.

An insurance contract made between the parties thereto " is to be enforced as they made it and understood it unless, because of some statutory provisions, the courts are required to give it a construction or effect which the parties never intended." (*Hopkins* v. *Connecticut Gen. Life Ins. Co.,* 225 N. Y. 76, 79.) The statutory provisions material here are those contained in section 101, the standard provisions section, of the Insurance Law (added by Laws of 1909, chap. 301, as amd. by Laws of 1923, chap. 28, and Laws of 1927, chap. 472), which provides that no life insurance policy, except policies of industrial insurance, shall be issued in this State unless it contains in substance the provisions set forth therein. There is

no provision in this section which in words or in effect forbids riders upon a life insurance policy; the several provisions, singly or jointly, do not purport to be exclusive. Riders are contemplated, else there would be no requirement that they must be approved by the Superintendent. So that the standard provisions are not absolutely to control all the provisions of the contract. All that this incontestable clause covers is the terms of the contract as made. The proposed rider limits the coverage by excluding therefrom a death which results in the particular manner and from the particular cause described in the rider. If the rider be permitted, a policy with the rider attached would constitute a complete contract; it would not be in conflict with any provision of section 101, and it would be the contract which the parties of their own choice had made. If an aviator, having such policy and rider, should meet his death as the result of service, travel or flight in any species of air craft, except as a fare-paying passenger, he could not recover, not because the policy, or any provision of it, was contested, but because the cause of death was not covered by the policy; to defend on such ground is not to contest the policy. A claim for fire loss could not be maintained under a life or an accident policy. Subdivision 3 of section 101 requires that there shall be in the policy a provision that it " shall constitute the entire contract between the parties; " also the concluding paragraph of the section provides that a rider approved by the Superintendent of Insurance shall be deemed to be a part of the policy to which it is attached. Evidently the incontestable clause does not prevent contesting a claim which is not covered by the policy. A plaintiff can recover in accord with the contract he proves only. We think these conclusions find support in the discussion in the *Hopkins Case* (*supra*). That riders, if approved by the Superintendent, may be attached to the standard policy is plainly stated in the paragraph following subdivision 10 and particularly by the words " No rider and no indorsement, except as stated above, shall be attached to or printed or stamped upon any policy issued or delivered in this State until the form of such rider or indorsement has been filed with the Superintendent of Insurance and formally approved by him. A policy * * * or rider form used in connection with any policy issued in violation of this section, shall nevertheless be held valid but shall be construed as provided in this section, and when any provision in such policy * * * or rider is in conflict with any provision of this section, or of any other statutory provision, the rights, duties and obligations of the insurer, the policyholder and the beneficiary shall be governed by the provisions of this section." It is apparent that no rider may be

lawfully attached to a life policy, *first*, if it is inconsistent, or conflicts with any standard provision, or, *second*, until it is approved by the Superintendent. The first, though not declared in the statute, is a necessary conclusion from the whole section. The second apparently is to enable the Superintendent to determine whether its terms comply with the statute. (*Hopkins* v. *Connecticut Gen. Life Ins. Co., supra.*) The statute does not declare on what ground or for what reasons he is to make his determination. But we here have to do with the first only. The determination here in question is based upon inconsistency only.

The one question then is whether the proposed rider, if approved, would be in conflict with and, therefore, forbidden by subdivision 2 of section 101. This subdivision declares that a life insurance policy " shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its date of issue except for non-payment of premiums and except for violation of the conditions of the policy relating to military or naval service in time of war * * *." Then follows an option and provisions not material to the issue here. In the standard provisions there are no " conditions of the policy relating to military or naval service in time of war." This plainly establishes that, in addition to the standard provisions, such " conditions " may be added to a life policy, and it is argued that, because this one exception is placed in the statute, no other rider is permissible. We find nothing in the section to justify this contention; we do find the provisions hereinabove discussed which justify a contrary view.

The rider is asked by the petitioner because of new conditions which have arisen with aviation. The aviator, while engaged in his operation, is under risks, the extent of which experience does not disclose; an insurance company has no data on which to estimate a fair and just premium. Many aviators desire to take out life insurance policies, but cannot afford to because of the amount of the premium which at present the companies feel required to demand. Thus the issue here is of interest, not only to the insurance companies, but to those who desire to have the benefit of life insurance. We find nothing in the statute or in public policy which forbids that this interest should be satisfied. It is apparently true as the Attorney-General argues that it has been the purpose of the Legislature to make a life insurance policy, after the expiration of two years, an absolute liability to the insured according to its terms. If our conclusion conflicts with this purpose, the remedy must rest with the Legislature. The Attorney-General suggests that the proposed rider would result in discrimination between aviator and " fare-paying passenger." We do not think

so. An aviator, engaged in his occupation, is exposed to more constant risks than are " fare-paying passengers." However, it is not for this court to determine here whether or not the Superintendent of Insurance could or should have approved this rider, but only whether or not the form of the rider was inconsistent with subdivision 2 of section 101.

We conclude, therefore, that the proposed rider is not inconsistent with the incontestable clause of the policy and a refusal to approve the rider on that account was not justified.

The determination of the Superintendent of Insurance should be reversed, with fifty dollars costs and disbursements, and the matter remitted.

HINMAN, DAVIS, WHITMYER and HASBROUCK, JJ., concur.

Determination reversed, with fifty dollars costs and disbursements, and matter remitted.