NELLIE M. KRAUSE, APPELLANT, V. PACIFIC MUTUAL LIFE
INSURANCE COMPANY, APPELLEE.

5 N. W. (2d) 229

FILED JULY 24, 1942. No. 31327.

*Beghtol, Foe & Rankin, Walter E. Nolte* and *Phil L. Sidles,* for appellant.

*Peterson & Devoe* and *Chauncey E. Barney, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ.

EBERLY, J.

This is an action by Nellie M. Krause to recover $10,000 upon an accident insurance policy issued by the defendant company upon the life of Victor Walton Krause, who died in the crash of a T. & W. A. transport plane at Buena Vista Peak in California on March 1, 1938.

The petition, in proper form and appropriate language, alleges the issuance by the defendant of its "Accidental and Total Loss Benefits policy * * * assuring * * * Victor Walton Krause against loss of his life from bodily injuries effected solely through external, violent and accidental means." Further, that while such policy was in full force and effect, "on the 1st day of March, 1938, the said Victor Walton Krause was actually riding as a fare-paying passenger in a licensed commercial aircraft provided by an incorporated common carrier for passenger service, and while said aircraft was operated by a licensed transport pilot and was flying in a regular civil airway between definitely established airports," the airplane crashed, and in such accident the insured "was killed from bodily injuries thereby effected and solely through external, violent and accidental means resulting directly and independently of all other causes." Full compliance with all applicable terms of the policy, including the furnishing of due proof of loss, and the refusal of defendant to pay as required by the terms of the contract of insurance, is set out in due form.

The defendant in an amended answer practically admits the allegations of plaintiff's petition, save in one respect, and, as the sole defense, alleges, in substance, that at the time of the occurrence of the accident Victor Walton Krause was not riding in the aircraft as a fare-paying passenger, but as the donee of a "trip pass" without payment by him of

any tariff or fare for said transportation or for said privilege.

For her reply plaintiff, in substance, alleges that the trip pass did not entitle Victor Walton Krause to ride upon the aircraft, but that prior to granting permission for embarkation said Krause was required to pay a consideration to the company, to wit, to purchase a flight coupon for the sum of $5; that prior to embarking Krause delivered such trip pass and flight coupon to the persons in charge of the aircraft and the same were accepted as payment of fare of such Krause. Plaintiff further alleged that Victor Walton Krause was entitled to receive, and did receive, the same accommodations and conveniences and rode in the airplane in the same manner as all of the other passengers then being transported.

A trial of these issues resulted in a finding generally in favor of the defendant, and a judgment of dismissal of plaintiff's action. From denial of her motion for a new trial, plaintiff appeals.

The plaintiff's reply sets forth the ultimate facts upon which, eliminating the conclusions of the pleader, the parties are in practical agreement. The evidence in the record is not conflicting. The general terms of this insurance contract are embodied in the instrument in suit in the usual form and substance. The provision of the policy out of which the instant dispute arises is the following: "21. This policy does not cover loss resulting directly or indirectly, in whole or in part from * * * (D) bodily injury sustained by the insured while in or on any vehicle or mechanical device for aerial navigation, or in falling therefrom or therewith, or while operating or handling any such vehicle or device, unless the insured is actually riding as a fare-paying passenger in a licensed commercial aircraft provided by an incorporated common carrier for passenger service, and while such aircraft is operated by a licensed transport pilot and is flying in a regular civil airway between definite established airports * * * ."

It will be noted that air travel, as such, is, by the terms

of the policy, made a strictly excluded risk, save and except when it is carried out in compliance with the words framing the exception to the contractual inhibition on that subject set forth in the policy.

The controlling question in this case is, whether, under the circumstances surrounding this fatal accident, Victor Walton Krause was then within the limitations created by the language of the exception above set forth.

"Of course, as is true of parties to insurance contracts generally, the parties to accident insurance contracts have the right and power to contract for what accidents and risks the company shall and shall not be liable, and the courts may not make new or different contracts for them." 29 Am. Jur. 706, sec. 930. See, also, *Hawkeye Commercial Men's Ass'n v. Christy*, 294 Fed. 208, 40 A. L. R. 46; *Kirkby v. Federal Life Ins. Co.*, 35 Fed. (2d) 126; *Commonwealth Casualty Co. v. Aichner*, 18 Fed. (2d) 879.

This jurisdiction is committed to these principles:

(1) "An insurance policy is a contract and, if couched in unambiguous and clear language, should be construed as other contracts." *Omar Baking Co. v. Employers Liability Assurance Corporation*, 130 Neb. 365, 264 N. W. 873; *Howie v. Cosmopolitan Old Line Life Ins. Co.*, 132 Neb. 367, 272 N. W. 207.

(2) "Where there is no uncertainty as to the meaning of an insurance contract, and the same is legal and not against public policy, it will be enforced as made." *Rye v. New York Life Ins. Co.*, 88 Neb. 707, 130 N. W. 434; *Howie v. Cosmopolitan Old Line Life Ins. Co.*, supra.

The parties to this litigation apparently do not challenge the legality of the general exclusionary clause denying accident coverage to all injured in the course of aerial transportation. They differ solely upon the question of the proper interpretation of the descriptive words which identify the class of persons which constitute the exception to the rule of exclusion as agreed upon by the parties to this contract. To come within the contractual exception to this exclusionary rule, and to entitle one to coverage under the terms of

this policy, five essential elements of requirements must be complied with, as expressed in a single sentence of the policy heretofore quoted, viz., "Unless the insured (1) is actually riding as a fare-paying passenger (2) in a licensed commercial aircraft (3) provided by an incorporated common carrier for passenger service, (4) and while such aircraft is operated by a licensed transport pilot (5) and is flying in a regular civil airway between definitely established airports."

The sole question to be determined, made by the pleadings and appearing in the evidence, is, "Was deceased at the time of the accident actually riding as a 'fare-paying passenger'?"

The evidence discloses that the accident occurred while Victor Walton Krause was en route from Mills Field, San Francisco, California, to the Kansas City Airport in Kansas City, Missouri. He had paid $8 in cash and was riding on a "trip pass" at the time his injuries were received. The $8 so paid was pursuant to the following regulations relative to "nonrevenue transportation:" "1. Effective December 21, 1937, all passengers traveling on non-revenue transportation forms shall be charged nominal amounts to defray cost of ticketing, passenger supplies, etc. 2. Service charges shall be determined by length of trip in accordance with chart on page 5153, which is computed on basis of following scale," etc.

The so-called trip pass on which the deceased was riding on its face contained the following stipulation: "Passholder agrees herewith to leave plane at any point at request of authorized representative of T. & W. A. Passholders are not permitted to reserve space on plane." On the obverse side of the pass are conditions set forth in print to be signed by the holder of the pass. They include, among others, the following: "The user expressly assumes all risk of accidents, and of personal injury, and loss or damage to property, regardless of their causes, and absolves the company from all liability therefor."

It also appears that at the time of the accident the regu-

larly scheduled tariff or fare for the transportation of a passenger from Mills Field, San Francisco, California, to the Kansas City Airport at Kansas City, Missouri, was the sum of $94.03, which sum was then regularly being charged and collected by the transporting company.

We are very doubtful whether a passenger who was deprived of the right of reserving space on the plane before going on board, whose present continuance therein was a matter of the carrier's option, who voluntarily assumed the obligation to leave the plane upon being so requested, who had expressly assumed all risk of accident and of personal injury, and any loss or damage to property regardless of their causes, and who also had absolved the company from all liability therefor, may be said in any event to be in the situation that it could justly be said that he was "actually riding as a fare-paying passenger."

The word "as," as employed in the policy provision quoted, we know is dependent on context and variously defined in accordance therewith. The Century Dictionary and Cyclopedia affords us numerous examples of the proper use of this word under various definitions by it given. A sentence by it quoted from Macaulay illustrates the situation which is here presented: "This gentleman was known to his contemporaries as a man of fortune, and *as* the author of two successful plays."

Applying the rule that terms of contracts are to be taken and understood in their plain, ordinary and popular sense, the words "unless the insured is actually riding as a fare-paying passenger" do not, in the light of the example quoted, present any question of ambiguity, but the ordinary and popular sense of the term conveys the meaning of "being a fare-paying passenger." The "fare-paying passenger" is the passenger who pays the legal fare. This in the present case was $94.03. The traveler can pay no other amount as "'fare," and the payment of no other than the legal fare will be a discharge of his obligation to make such payment. "Fare," as used in connection with interstate transportation, we define as a rate of charge for the carriage of passen-

gers, as approved by the proper governmental agency. In this sense of the term the deceased was not a "fare-paying passenger" as that term was employed in the contract in suit.

Nor do we find that the provisions of section 44-322, Comp. St. 1929, are invoked by the case here presented. What we have here is not a forfeiture of a policy upon conditions broken, but an excepted risk never assumed by the insurer. That was the express contract made. Courts are not empowered to make new contracts for its suitors. It is not intended or contemplated by the policy in suit that aeronautic activities of the kind disclosed by the evidence in the instant case shall avoid or annul such policy, but its provisions amount merely to an express agreement that the insurance coverage should not extend to an accident sustained in that way. *Wendorff v. Missouri State Life Ins. Co.*, 318 Mo. 363, 1 S. W. (2d) 99; *Hawkeye Commercial Men's Ass'n v. Christy*, 294 Fed. 208; *Head v. New York Life Ins. Co.*, 43 Fed. (2d) 517; *Matter of Metropolitan Life Ins. Co. v. Beha*, 226 App. Div. 408, 235 N. Y. Supp. 501.

Again, the policy of insurance in the instant case, as an entirety, wholly excludes coverage so far as airplane accidents are involved, but provides as an exception thereto, upon conditions stated, the case of an insured "actually riding as a fare-paying passenger." If this be deemed a condition, and the exception to which it is limited and of which it forms an elemental part is invalidated thereby, the general clauses of the policy would then still remain in full force and effect. This would necessarily exclude coverage from all airplane accidents of any kind or nature. So, it appears, in view of the entire record, that the action of the district court in denying plaintiff relief was in accordance with the facts in the record and the law of the case.

The judgment of the district court is, therefore,

AFFIRMED.