**BURNS et al. v. MUTUAL BEN. LIFE INS. CO. OF NEWARK, N. J.**

No. 251.

United States District Court
W. D. Michigan, N. D.

Sept. 20, 1948.

848

S. W. Patek, of Ironwood, Mich. (Ralph E. Helper, of Detroit, Mich., of counsel), for plaintiffs.

Ivan D. Wright, of Ironwood, Mich. (Dickinson, Wright, Davis, McKean & Cudlip and Max L. Veech, all of Detroit, Mich., of counsel), for defendant.

STARR, District Judge.

The parties have stipulated the material facts in this case. Plaintiffs, who are husband and wife, are residents of Michigan; defendant is a New Jersey corporation authorized to transact life insurance business in Michigan. On September 13, 1941, the defendant executed and delivered its life insurance policy in the principal amount of $5,000 upon the life of plaintiffs' son, Robert W. Burns, the plaintiffs being designated therein as beneficiaries. Subsequent to the issuance of this policy, the insured entered the United States military service, and on June 7, 1943, was a flight officer in the army air corps and a member of the 63d troop carrier squadron, 403d troop carrier group, which was stationed at Pope field, Fort Bragg, North Carolina. On that date the insured was a passenger on an army airplane which was on an authorized flight from Pope field to the Laurienburg-Maxton army air base at Maxton, North Carolina. The plane, which was transporting the insured and other military personnel to that air base for the purpose of ferrying gliders to an army maneuver area in Tennessee, was piloted by Lieutenant L. A. Foster, Jr., who was rated as an army "troop carrier pilot" but who had not been licensed as a pilot by the civil aeronautics administration of the Department of Commerce. While on this flight, the plane exploded and fell, and the crew and all passengers, including plaintiffs' son, were killed. The army advised plaintiffs that their son had been killed while in the performance of a flying mission.

The insured had made application for the policy in question on August 30, 1941, and on the same date had made a supplement to this application, copies of which were attached to and made a part of the policy. In the supplement the insured stated in substance that during the first preceding year he had made two flights totaling 120 miles; that during the second preceding year he had made 40 flights totaling 2,000 miles; that his most recent flights had been made in July and September, 1940; that he had made numerous flights during lessons in flying; that his private pilot's license had expired and that he did not expect to renew it; that he did not contemplate any training in operating an airplane; that he did not own an airplane;

that he was not connected with a government or State aviation unit; and that he did not intend to fly in a privately owned plane or in one owned by his employer.

Under the heading "indorsements" the policy provided: "The provisions regarding aviation appended hereto are hereby made a part of this contract." A rider entitled "aviation clause" reading as follows was attached to and made a part of the policy and was also included in the insured's supplement to his application for the policy:

"Death occurring by reason of any aerial flight or journey is not a risk assumed by the Company, except to the extent of the entire reserve, less any indebtedness, on this policy or any extended insurance hereunder. If the insured at the time of such flight shall be a fare-paying passenger in course of transportation from one definite terminal to another by means of an aerial conveyance in charge of a licensed pilot, this provision shall not be effective."

Under the heading "general provisions" the policy further provided: "Except for non-payment of premium, this policy will become incontestable one year after its date of issue, if the insured be then living; or, if the insured be not then living, two years after its date of issue." All premiums on the policy had been paid in full, and at the time of the insured's death the reserve on the policy, less any indebtedness, was the sum of $84.32. Plaintiffs furnished proof of their son's death and demanded payment of the principal amount of the policy. Payment was refused, and plaintiffs began the present suit. In its answer defendant admitted liability for the reserve on the policy, but denied liability for the principal amount, on the ground that the insured's death occurred as the result of an "aerial flight or journey," which was a risk excluded from the coverage of the policy; and on the ground that the insured was not a "fare-paying passenger in the course of transportation from one definite terminal to another by means of an aerial conveyance in charge of a licensed pilot" as provided in the aviation clause.

Comp.Laws Mich.1929, § 12427, provides in part:

"No policy of life insurance shall be issued in this state, unless the same shall contain the following provisions: * * *

"Third, A provision that the policy * * * shall be incontestable after it shall have been in force during the life time of the insured for two (2) years from its date, except for non-payment of premiums and except for violations of the policy relating to naval and military services in time of war."

The above provision must be read in connection with the following section, Comp. Laws Mich.1929, § 12428, as amended by Pub.Acts 1939, No. 59, which provides:

"Nothing contained in this subsection nor in subsection 3 of the preceding section (§ 12427 quoted above) relating to incontestability, shall be construed as prohibiting a life insurance company from placing in its policies a provision or rider limiting its liability with respect to risks incident to aviation: Provided, That no limitation shall be made with respect to fare-paying passengers of commercial airlines flying on regularly scheduled routes between definitely established airports: And provided further, That the liability of the company under such a provision or rider shall in no event be fixed at an amount less than the full reserve of the policy and any dividend additions thereunder, less any indebtedness on or secured by such policy."

It is clear that under this statute the defendant was entitled to make the "aviation clause" a part of the policy it issued to plaintiffs' son. In other words, defendant was entitled to limit its liability "with respect to risks incident to aviation." Although the incontestability provision in defendant's policy did not except risks relating to "military services in time of war," the aviation clause expressly excluded risks "by reason of any aerial flight or journey." Plaintiffs contend that, because the incontestability provision did not except risks from military service, defendant is barred from asserting a defense under the aviation clause. The court cannot agree with this contention, as the incontestability provision has nothing whatever to do with the extent or limitation of the coverage agreed upon between the parties in the insurance contract. The case of

850

Wilmington Trust Co. v. Mutual Life Ins. Co. of New York, D.C., 68 F.Supp. 83, involved a life insurance policy containing aviation and incontestability clauses substantially the same as those in the policy here in question. In discussing the relation and effect of these provisions, the court said, 68 F.Supp. at pages 84, 86, 87:

"The question is whether the Delaware statute and the incontestable clause in the policies bar defendant's right to rely on the aviation rider. * * *

"That a policy is incontestable means that its *validity* can not be questioned, usually after a certain period of time as fixed by statute or by a provision in the policy of insurance itself. Incontestability has nothing whatever to do with the extent or limits of coverage agreed to between the parties to the insurance contract. Every court, our analysis discloses, has so interpreted incontestability where *the matter was directly in issue*. See, Head v. New York Life Ins. Co. (Head v. Hartford Accident Indemnity Co.), 10 Cir., 43 F.2d 517, 520; Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 169 N.E. 642; Woodbery v. New York Life Ins. Co., 129 Misc. 365, 221 N.Y.S. 357; Flannagan v. Provident Life & Accident Ins. Co., 4 Cir., 22 F.2d 136; Mack v. Connecticut General Life Ins. Co. of Hartford, 8 Cir., 12 F.2d 416; * * *

"The leading case upon the question whether an aviation rider is consistent with an incontestable statute is Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 169 N.E. 642. The statute there involved was substantially similar, if not almost identical, to the Delaware statute. This case is authority for the conclusions already stated. Mr. Justice Cardozo, then Judge, wrote the opinion for a unanimous court. He said: 'The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition.' * * *

"In Pacific Mutual Life Insurance Co. of California v. Fishback, 171 Wash. 244, 17 P.2d 841, 842, the court said of the aviation rider: 'It is merely a part of the definition or description of the risk or hazard assumed by the insurance company. The language is, with reference to death occurring under any of the specified conditions, "is a risk not assumed under this policy." It seems plain to us that a risk "not assumed" by such express language is a matter not at all inconsistent with the required statutory incontestable provision, and that the resisting by an insurance company of a claim for loss which by such express terms of the policy is "not assumed" by the insurance company is not a contesting of the policy within the meaning of the statutory incontestable clause required to be embodied therein.'

"Validity, in short, has nothing whatever to do with the risk and does not dictate the quantum of risk which a company must assume by agreement with the insured."

In the case of Head v. New York Life Ins. Co., 10 Cir., 43 F.2d 517, the court considered the effect of a statutory incontestability provision substantially the same as that in the Michigan statute. The court there said, 43 F.2d at page 519:

"The 'incontestable' provision * * * is not a mandate as to coverage nor a definition of the hazards to be borne by the insurer. It provides rather that, after the expiration of the two year period, the policy, within the limits of the coverage, shall stand unaffected by any defense that it was invalid in its inception or thereafter became invalid by reason of a condition broken. The exceptions to the 'incontestable' provision of the statute do not militate against this construction. Here, again, the distinction must be made between limitation on the coverage and limitation on a defense of invalidity. A policy may provide that default in the payment of a premium or the entry of the insured into the military or naval service shall forfeit the insurance. Such a condition is more than a limitation of the risk. It is a provision for forfeiture upon a condition broken. In the event of its violation, the policy, at the election of the insurer, is avoided altogether and this, notwith-

standing the death of the insured is unrelated to the breach. No such result follows when there is mere restriction as to coverage. The policy is still valid and enforceable in respect to the risks assumed. Such being the nature and purpose of an 'incontestable' provision, it is clear that such a clause does not preclude the insurer from asserting that the risk producing the death of the insured was not within the coverage of the policy. Jolley v. Jefferson Standard Life Ins. Co., [199] (N.C.) [269], 154 S.E. 400, decided August 20, 1930; Sanders v. Jefferson Standard Life Co. (C.C.A. 5) 10 F.2d 143; Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 169 N.E. 642."

In discussing the effect of the incontestability clause in the policy involved in the case of Rossman v. Metropolitan Life Ins. Co., D.C., 71 F.Supp. 592, 597, the court said:

"Perhaps the best explanation of the functions served by the 'aviation rider' and 'incontestability clause' is afforded by Williston (Rev.Ed.1936, Vol. 3, p. 2280):

" 'In determining whether the incontestable clause is applicable to a given situation a distinction should be noted between matters of defense going to the invalidity of the whole policy on the one hand, and on the other hand provisions relating to excepted risks. The incontestable clause is intended not to enlarge the scope of the insurer's promise so as to include liability either by express terms of the policy or by implication of law, but to make certain the enforceability of the promise as set out in the policy. * * * The contrary decisions which regard the two provisions as conflicting, and which, on the principle of interpreting against the insurer, hold that the incontestable clause prevails over the other, fail to observe this distinction. The same reasoning is applicable to a provision excluding from the risk assumed by the insurer, death caused by engaging in aviation. * * *' "

See also Green v. Mutual Ben. Life Ins. Co., 1 Cir., 144 F.2d 55; Wilmington Trust Co. v. Mutual Ins. Co. of New York, D.C., 76 F.Supp. 560; Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 169 N.E. 642; Durland v. New York Life Ins. Co.,

186 Misc. 580, 61 N.Y.S.2d 700; Knouse v. Equitable Life Ins. Co., 163 Kan. 213, 181 P.2d 310; Hyfer v. Metropolitan Life Ins. Co., 318 Mass. 175, 61 N.E.2d 3; McBride v. Prudential Ins. Co. of America, 147 Ohio St. 461, 72 N.E.2d 98; Thoma v. New York Life Insurance Co., 30 Northam. Law Rep., Pa., 369.

In pursuance of the foregoing authorities the court concludes that the absence of a war-risk exception in the incontestability provision of the policy here in question does not preclude defendant from asserting a defense under the provisions of the aviation clause. There is no conflict between the incontestability and the aviation provisions of the policy, nor is the aviation clause ambiguous. The absence of a war-risk exception in the incontestability provision does not operate to engraft an implied war-risk exception on the aviation clause.

In support of its contention that the absence of a war-risk exception in the incontestability provision of the policy bars defendant from defending under the provisions of its aviation clause, plaintiffs cite and rely upon Paradies v. Travelers Ins. Co., 183 Misc. 887, 52 N.Y.S.2d 290, and Bernier v. Pacific Mut. Life Ins. Co. of California, 173 La. 1078, 139 So. 629, 88 A. L.R. 765. The above-cited case of Durland v. New York Life Ins. Co., which sustains the defendant's position, was decided by the Supreme Court of Orange County, New York, nearly two years after the decision by the City Court of New York in the Paradies Case. The Bernier Case, decided by the Supreme Court of Louisiana in 1932, was discussed and distinguished in the later Federal and State-court decisions supporting defendant's contentions. Other cases cited by plaintiffs do not sustain their claim that defendant is precluded from asserting a defense under the aviation clause of the policy.

The law is well established that in case of ambiguity or doubt in the language used in an insurance policy, the construction most favorable to the insured should be adopted. Aschenbrenner v. United States Fidelity & Guaranty Co., 292 U. S. 80, 54 S.Ct. 590, 78 L.Ed. 1137; Stipcich v. Metropolitan Life Ins. Co., 277 U.S.

311, 48 S.Ct. 512, 72 L.Ed. 895; Mutual Life Ins. Co. of New York v. Hurni Packing Co., 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; Preferred Acc. Ins. Co. v. Rhodenbaugh, 6 Cir., 160 F.2d 832; Green v. Mutual Ben. Life Ins. Co., supra; Bull v. Sun Life Assur. Co. of Canada, 7 Cir., 141 F.2d 456, 155 A.L.R. 1014; Allor v. Dubay, 317 Mich. 281, 26 N.W.2d 772. The law is also well established that the terms of an insurance policy shall be construed in the plain, ordinary, and popular sense of the language used, and that a provision of a policy plainly and definitely expressed in appropriate language must be enforced in accordance with its terms. Kirkby v. Federal Life Ins. Co., 6 Cir., 35 F.2d 126; Hooker v. New York Life Ins. Co., 7 Cir., 161 F.2d 852; Massachusetts Mut. Life Ins. Co. v. Pistolesi, 9 Cir., 160 F.2d 668; Kingsley v. American Central Life Ins. Co., 259 Mich. 53, 242 N. W. 836; Ashley v. Agricultural Life Ins. Co. of America, 241 Mich. 441, 217 N.W. 27, 58 A.L.R. 1208.

■ The aviation clause of the policy in question provides that "death occurring by reason of any aerial flight or journey is not a risk assumed by the company." This clause is plain, expressed in appropriate language, unambiguous, and there can be no doubt as to its meaning. The term "aerial flight or journey" is broad and all-inclusive and clearly includes a flight in a military plane. It is clear that the defendant company declined to assume the additional risks of death occasioned by any aerial flight or journey, unless the insured was a paying passenger in the course of transportation from one definite terminal to another by means of an aerial conveyance in charge of a licensed pilot. In considering an identical provision in the aviation clause of the life insurance policy involved in Green v. Mutual Ben. Life Ins. Co., supra, 144 F.2d at pages 56, 57, the court said:

"We can discover no ambiguity in the aviation clause, either patent or latent. * * *

"The aviation clause excludes generally 'death occurring by reason of any aerial flight' and it certainly cannot be gainsaid that Green was engaged in an aerial flight on April 13, 1943, the day of his death. The clause then introduces one qualification, namely, that it is not to be applicable in the single situation where the insured is a fare-paying passenger in course of transportation from one definite terminal to another by means of an aerial conveyance in charge of a licensed pilot. Appellant would also have us read into the clause another qualification to the effect that it shall be inapplicable where the insured is flying a plane under orders in military or naval service. Such a reading would go beyond the scope of permissible interpretation. As appellee rightly says, the company is interested in the risk itself, and is not concerned with the reason for the exposure. * * *

"The natural and obvious meaning of the aviation clause in the case at bar is that the insurer declines to assume those extra risks of death ordinarily associated with aerial flight."

In denying recovery under a policy containing an aviation clause somewhat similar to that involved in the present case, the court in Wilmington Trust Co. v. Mutual Life Ins. Co. of New York, D.C., 76 F. Supp. 560, 564, said:

"One line of cases decided since the war—which I believe express the majority view—hold that one even concededly in the military service can not recover under an aviation rider, similar to the one in question, unless he is a paying passenger in a regular commercial airliner. Thoma v. New York Life Ins. Co., 30 Northam. Law Rep., Pa., 369; Green v. Mutual Benefit Life Ins. Co., 1 Cir., 144 F.2d 55; Hyfer v. Metropolitan Life Ins. Co., 318 Mass. 175, 61 N.E.2d 3; Durland v. New York Life Ins. Co., 186 Misc. 580, 61 N.Y.S.2d 700; Knouse v. Equitable Life Ins. Co., 163 Kan. 213, 181 P.2d 310. * * * Had the insurer put in the policy that it meant to exclude from coverage military as well as civilian flights, it is obvious that duPont would be excluded. It seems to me the insurer has done precisely the same thing when it excluded all flights except those as a fare-paying passenger on a commercial airliner."

See also Order of United Commercial Travelers of America v. King, 4 Cir., 161

F.2d 108; Head v. New York Life Ins. Co., supra; Rossman v. Metropolitan Life Ins. Co., supra; Metropolitan Life Ins. Co. v. Conway, supra; Durland v. New York Life Ins. Co., supra; Hyfer v. Metropolitan Life Ins. Co., supra; McBride v. Prudential Ins. Co. of America, supra; Thoma v. New York Life Insurance Co., supra. A careful reading of Boye v. United Services Life Ins. Co., App.D.C., 168 F.2d 570, and Bull v. Sun Life Assur. Co. of Canada, supra, shows that they support defendant's contention that the insured's death in the present case occurred by reason of an "aerial flight or journey," which was a risk expressly excluded from the coverage of the policy. This court cannot agree with the reasoning and conclusion reached in Conaway v. Life Ins. Co. of Virginia, 148 Ohio St. 598, 76 N.E.2d 284; and it may be noted that the decision in that case was by a divided court, three judges dissenting.

Plaintiffs further contend that their son, at the time of his death, was a fare-paying passenger in the course of transportation from one definite terminal to another by an airplane in charge of a licensed pilot, and that they are therefore entitled to recover under the exception in the aviation clause of the policy. The insured and other military personnel were on an authorized flight in an army plane, and from the stipulated facts it may be assumed that he did not pay for his transportation. A fare-paying passenger is one who pays the established legal rate of fare. Krause v. Pacific Mut. Life Ins. Co., 141 Neb. 844, 5 N.W.2d 229; Continental Life Ins. Co. v. Newman, 219 Ala. 311, 123 So. 93. The insured's transportation may have been an expense to the army, but that fact did not make him a fare-paying passenger within the ordinary and generally accepted meaning of that term as used in the aviation clause of the policy. In support of their claim plaintiffs cite and rely upon Quinones v. Life & Casualty Ins. Co. of Tennessee, 209 La. 76, 24 So.2d 270, 271. Dr. Quinones was a member of the medical corps of the United States army and was accidently killed when a military plane in which he was traveling under military orders crashed into a mountainside in Puerto Rico. The policy in that case provided: "Should the death of the Insured result from operating, or riding in, any kind of an aircraft, except as a fare-paying passenger in a licensed passenger aircraft operated by a licensed pilot on a regular passenger route between definitely established airports, only the reserve under this Policy shall be payable." The court, in concluding that Dr. Quinones was a fare-paying passenger on a regular passenger route in a plane piloted by a licensed pilot, said: "If the Army * * * itself transports its personnel, at its expense, in lieu of paying their fare to private carriers, the members of this personnel may still be said to be fare-paying passengers in the broadest use of that term. * * * If Dr. Quinones had proceeded by rail instead of by airplane, the Army would have procured for him a paid railroad ticket." This court cannot agree with the rather far-fetched reasoning and the conclusion reached in the Quinones Case. It is clear in the present case that on the occasion of his death the insured was not a fare-paying passenger within the meaning of that term as used in the aviation clause of the policy in question.

It is obvious that the single exception in the aviation clause reading, "if the insured at the time of such flight shall be a fare-paying passenger in course of transportation from one definite terminal to another by means of an aerial conveyance in charge of a licensed pilot," refers only to commercial flights, that is, fare-paying flights on commercial airlines operating between definitely established airports on established airline routes. It is in this context that the policy used the terms "from one definite terminal to another" and "licensed pilot." On the occasion of his death the insured was on a military flight from Pope airfield to the Laurienburg-Maxton army air base. He and other military personnel were being transported on an army plane to the air base for the purpose of ferrying gliders to a maneuver area in Tennessee. He was not in the course of transportation "from one definite terminal to another" within the meaning of that term as used in the aviation clause. See McBride v. Prudential Ins. Co. of America, supra. The term "licensed pilot" in the aviation clause of the policy means one licensed by the civil

854

aeronautics administration to pilot a plane carrying passengers for hire. The plane in which the insured was traveling was piloted by an officer who was rated by the army as a "troop carrier pilot," but he was not licensed as a pilot by the civil aeronautics administration of the United States Department of Commerce. In Richardson v. Iowa State Traveling Men's Ass'n, 228 Iowa 319, 291 N.W. 408, the court said: "Army planes are operated wholly independent of civil aeronautic regulations." Therefore, the plane was not "in charge of a licensed pilot" within the meaning of that term as used in the aviation clause.

The court concludes that the insured's death occurred by reason of an "aerial flight or journey," which was not a risk assumed by the company The court further concludes that on the occasion of his death, the insured was not a "fare-paying passenger in course of transportation from one definite terminal to another by means of an aerial conveyance in charge of a licensed pilot," as provided in the aviation clause of the policy in question. Therefore, under the terms of that clause, plaintiffs are entitled to recover only the sum of $84.32, which was the entire reserve less any indebtedness on the policy on June 7, 1943, the date of the insured's death.

Judgment will be entered in favor of the plaintiffs and against the defendant for the sum of $84.32.