·SHAYNE HUTZEL et al., as Administrators of the Estate of WOLFGANG HUTZEL, Deceased, Respondents, v UNITED STATES AVIATION UNDERWRITERS, INC., et al., Appellants, and KAREN V. MOLINARI, as Executrix of JOSEPH P. MOLINARI, JR., Deceased, et al., Respondents, et al., Defendants.

Third Department, December 3, 1987

## APPEARANCES OF COUNSEL

*Windels, Marx, Davies & Ives (Anthony A. Dean, Thomas J. Mulligan* and *Laura E. Longobardi* of counsel), and *Coughlin & Gerhart (James P. O'Brien* of counsel), for appellants.

*Joseph T. Pondolfino* for Shayne Hutzel and another, respondents.

*Daniel Donnelly (Norman E. Frowley* of counsel), for Karen Molinari, respondent.

*Powers & Santola (Daniel R. Santola* of counsel), for Connie L. Place, respondent.

*Philip J. Devine* for Henry W. Lyall, respondent.

## OPINION OF THE COURT

MAIN, J.

On March 21, 1984, Wolfgang Hutzel (hereinafter decedent) was killed when the Piper Chieftan airplane which he was piloting crashed as it approached Oneonta Municipal Airport in Otsego County. All other persons on board the Piper Chieftan, which was owned by defendant Kar-San Development, Ltd., were killed, including Kar-San employees Joseph P. Molinari, Jr., Darryl L. Place and John H. Lyall, who are represented in this action by the personal representatives of

their estates, and decedent's wife. It is undisputed that at the time of the crash the Piper Chieftan was returning from a Kar-San business trip, but that decedent was not employed by Kar-San; he piloted the plane as an independent contractor *(see, Molinari v Kar-San Dev.,* 117 AD2d 194, 195, *affd* 69 NY2d 910).

In 1983, Kar-San obtained an aircraft liability policy (hereinafter the policy) issued by defendant United States Aviation Underwriters, Inc. (hereinafter USAU). Initially, this policy covered a 1970 Beech Bonanza aircraft owned by Kar-San. When Kar-San sold the Beech Bonanza and purchased the Piper Chieftan, however, Kar-San and USAU executed an endorsement to the policy substituting the Piper Chieftan for the Beech Bonanza. At the same time USAU executed a second endorsement designating pilots who were approved to fly the Piper Chieftan. Decedent was named as an approved pilot. Following the execution of these endorsements, USAU inquired of its agent whether decedent was an employee or independent contractor and advised that if he was the latter, he would not be covered under the policy. In reply, the agent advised that decedent was not an employee. A third endorsement to the policy subsequently increased the policy's liability coverage to $10,000,000.

The policy is written in "clear, easy-to-understand language" and notes that *"you* and *your* refer to the person or organization named on the Coverage Summary page" (emphasis in original); on this page, Kar-San is named as the policyholder. The policy further provides that, "To be covered under this policy the aircraft must be * * * flown only by a pilot or pilots described [on the coverage summary page]"; decedent was named as a pilot on the coverage summary page. Next, the "Who's covered" section extends coverage to "[a]nyone who is using or riding in your aircraft with your permission". There is no serious dispute that decedent was using the aircraft with Kar-San's permission. Finally, under a section entitled "Who's not covered", the policy recites:

"Although the person or organization named on the Coverage Summary page is covered, we won't cover any liability claim against:

"Any other person or organization or their agents or employees that manufacture or sell aircraft, aircraft engines or aircraft accessories. Nor will we cover people or organizations that operate an aircraft repair shop, aircraft sales agency,

aircraft rental service, commercial flying service or flying school or *any person engaged in commercial aviation*" (emphasis supplied).

The primary issue on this appeal requires us to consider the import of the term "engaged in commercial aviation".

Following the crash, Molinari's estate commenced a wrongful death action against plaintiffs as representatives of decedent's estate, as well as others. Plaintiffs forwarded the summons and complaint to USAU, demanding a defense in that action. USAU refused to provide a defense, claiming that decedent, as an independent contractor, was not an insured under the policy. Plaintiffs then commenced this action against Kar-San and USAU seeking a judgment declaring that decedent was covered under the policy and that USAU was required to provide a defense to the action brought by Molinari's estate. Subsequently, the representatives of the estates of Molinari, Place and Lyall were added as defendants in plaintiffs' action. These parties have interposed cross claims against USAU seeking, *inter alia,* a judgment declaring that decedent was covered under the policy.

USAU and Kar-San (hereinafter collectively referred to as defendants) moved for summary judgment declaring that decedent was not covered under the policy. Plaintiffs cross-moved for summary judgment and the estates of Molinari, Place and Lyall joined in plaintiffs' opposition to defendants' motion. Supreme Court denied defendants' motion and granted plaintiffs' cross motion, and further awarded summary judgment to the estates of Molinari, Place and Lyall on their cross claims against defendants (even though these parties had not requested such relief [see, CPLR 3212 (b)]) on the ground that USAU had failed to give timely notice of disclaimer to all involved. Defendants appeal from Supreme Court's order.*

█ Initially, we reject defendants' claim that decedent was not covered under the policy. As noted, there can be no serious dispute that decedent was piloting the Piper Chieftan with Kar-San's permission and, thus, that he falls within the provisions of the "Who's covered" section of the policy. The language concerning persons "engaged in commercial aviation", however, by appearing in the section of the policy

---

* Various discovery motions were decided by Supreme Court and the notice of appeal recites that defendants were excepting to these matters. Because these issues have not been briefed, we deem them to have been abandoned.

entitled "Who's not covered" and stating exactly what is not covered under the policy of insurance *(see, e.g., Schiff Assocs. v Flack,* 51. NY2d 692, 697), is clearly an exclusion. Thus, the more difficult question on this appeal is whether decedent was excluded from coverage because he was "a person engaged in commercial aviation".

Defendants submit that decedent was "a person engaged in commercial aviation" because he had previously flown for a commercial airline, was paid for his services as a self-employed pilot and flight instructor and was receiving compensation for piloting at the time of the crash. Plaintiffs, joined by the estates of Molinari, Place and Lyall, argue that Supreme Court's determination that the clause can be construed in many ways was correct. In resolving this matter, we note that an ambiguity exists in an insurance policy when a term "is capable of more than one meaning" *(Sincoff v Liberty Mut. Fire Ins. Co.,* 11 NY2d 386, 390). Furthermore, such ambiguities, especially in the exclusionary clause of a policy, are to be construed against the insurer *(see, Breed v Insurance Co.,* 46 NY2d 351, 353), which bears the burden of showing that its interpretation is the only one which reasonably can be placed on the exclusionary clause *(see, Sincoff v Liberty Mut. Fire Ins. Co., supra; York v Sterling Ins. Co.,* 114 AD2d 665, 666, *affd* 67 NY2d 823).

As defendants urge, "commercial aviation" could reasonably refer to a person "engaged" therein and the exclusion would apply when the pilot was deriving compensation from operating the plane. Just as reasonable, however, is the view that the exclusion would apply (and no coverage would be available) to a person operating an airplane when the airplane's owner was deriving compensation from the use of the plane, which was not the situation herein, as the Piper Chieftan was being operated for Kar-San's benefit in the course of its business. Furthermore, the phrase leaves unclear whether the "person" had to be "engaged in commercial aviation" at the time of the occurrence or might have been so engaged at some earlier unspecified time. Moreover, considering the plain language style of the insurance contract, we do not find it unreasonable to interpret "commercial aviation" as referring to the popular perception of regularly scheduled airplane service complete with tickets, schedules and attendants, something decedent clearly was not involved with while flying for Kar-San. We also note the absence of a definition in the policy

for the subject phrase. Under these circumstances, we conclude that defendants have failed to satisfy their burdens of showing their interpretation of the exclusionary clause as the only reasonable one and, accordingly, affirm Supreme Court's determination on this issue. In reaching this result, we are not unmindful of the communications between USAU and its agent concerning decedent's status as an employee or independent contractor. These communications, however, are conclusory in nature and do not even discuss the meaning of the phrase "a person engaged in commercial aviation" *(see, State of New York v Home Indem. Co.,* 66 NY2d 669, 671).

We next reject defendants' argument that plaintiffs, as decedent's representatives, are strangers to the policy and, therefore, that they are precluded from relying on the rule of strict construction against an insurer. It is well settled that under automobile policies, to which aircraft insurance has many similarities *(see, e.g.,* 7A Appleman, Insurance Law and Practice § 4501.01, at 237-238 [Berdal ed]), an injured third party seeking a declaration concerning who is or is not covered under a policy of insurance may invoke the rule "that uncertainties created by the language of the contract as to the persons protected are to be construed in favor of imposing liability on the insurer" (2 Couch, Insurance § 15.92, at 438 [2d ed]). We note that *American Lumbermens Mut. Cas. Co. v Trask* (238 App Div 668, *affd* 264 NY 545), relied on by defendants, was limited in *Hammond v New York Cas. Co.* (239 App Div 627). Indeed, defendants, in their reply brief, recognize that there are circumstances when others than the named insured can claim the benefit of the rule of strict construction against the insurer *(see, e.g., Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co.,* 34 NY2d 356; *Fagnani v American Home Assur. Co.,* 101 AD2d 803, *revd on other grounds* 64 NY2d 967). Under these circumstances and considering that decedent so clearly falls under the "Who's covered" section of the policy, we conclude that plaintiffs are entitled to invoke the rule against strict construction.

Having resolved the substantive issue involved herein, we see no reason to reach the parties' contentions concerning USAU's compliance with Insurance Law § 3420 (d), which requires written notice of disclaimer or denial of coverage as soon as is reasonably possible to any claimant. The estates of Molinari, Place and Lyall are entitled to judgment as the

analysis undertaken herein is equally applicable to their cross claims against defendants seeking declarations of coverage for decedent under the policy.

MAHONEY, P. J., KANE, YESAWICH, JR., and LEVINE, JJ., concur.

Order affirmed, with costs to respondents filing briefs.