**ESTATE of Nelson J. MILLER,**
**Plaintiff,**

v.

**PRINCIPAL MUTUAL LIFE**
**INSURANCE COMPANY,**
**Defendant.**

No. 90–1558–Civ–T–21(B).

United States District Court,
M.D. Florida,
Tampa Division.

April 14, 1992.

Paul L. McKean and John H. Myers, Sarasota, Fla., for plaintiff.

David C. Banker, Tampa, Fla., for defendant.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

NIMMONS, District Judge.

This action involves the interpretation of an exclusionary provision contained in a group life insurance plan arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The Defendant, Principal Mutual Life Insurance Company ("Principal Mutual"), and the Plaintiff, the estate of Nelson J. Miller, have filed cross-motions for summary judgment. At the hearing on the motions, counsel for both parties conceded that there were no genuine issues of material fact left to be determined and that judgment should be entered for one or the other of the parties as a matter of law. After thoroughly reviewing the memoranda and exhibits submitted and the applicable case law, having heard oral argument by counsel and upon consideration of the proposed findings filed by the respective parties, the Court concludes that judgment should be entered in favor of the Defendant.

## BACKGROUND

At all relevant times, Nelson J. Miller was employed by D.L. Porter Construction, Inc. ("Porter Construction"), as a project superintendent. Miller was insured under a group life insurance policy issued to Porter Construction by Principal Mutual.

On August 2, 1989, Miller and five other Porter Construction employees, including the pilot, boarded an aircraft known as a Beechcraft 70 Queen Air (the "Queen Air") in Albany, Georgia. The airplane, which was owned by Rainbow Properties, Inc.,[1] was destined for Akron, Ohio. Unfortunately, shortly after attempting takeoff, the airplane crashed and all of the individuals on board were killed.

Joni A. Miller, the decedent's wife, subsequently filed claims with Principal Mutual seeking $35,000 in member life insurance benefits and $35,000 in accidental death benefits. The Defendant paid the claim for member life insurance benefits; however, relying upon an exclusionary provision contained in the policy, Principal Mutual denied the accidental death benefits claim.

The relevant exclusionary clause provides, in pertinent part, as follows:

Article 4—Limitations

Payment will not be made for any loss to which a contributing cause is:

\*　　\*　　\*　　\*　　\*　　\*

d. participation in flying, ballooning, parachuting, or other aeronautic activities, except as a passenger on a commercial aircraft ...

\*　　\*　　\*　　\*　　\*　　\*

Policy, Part IV, § B, Article 4.

After reviewing the circumstances surrounding the claim, Principal Mutual denied coverage based upon its contention that Miller was not a passenger on board a commercial aircraft when he died.

On November 11, 1990, alleging wrongful denial of benefits, the estate of Nelson J. Miller initiated this action in the Circuit Court of Sarasota County. On December 19, 1990, asserting the existence of federal jurisdiction pursuant to ERISA, the Defendant filed its petition removing the case to this Court. On February 12, 1991, the Court denied Plaintiff's motion to remand.

## DISCUSSION

Miller's estate contends that it is entitled to the accidental death benefits because Miller was killed while he was a passenger on board a commercial aircraft. In addition, Plaintiff contends that the phrase "commercial aircraft," as set forth in the exclusionary provision of the policy, is an ambiguous term.

---

1. In February 1988, for reasons which the parties have agreed are not germane to the resolution of this matter, Porter Construction transferred ownership of the aircraft to Rainbow Properties, Inc., a separate construction-related business also controlled by D.L. Porter, president of Porter Construction.

The term "commercial aircraft" is not defined in the policy. A term is ambiguous if it is reasonably susceptible to more than one interpretation. *Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354, 1360 (11th Cir.1988); *Fabrica Italiana Lavorazione v. Kaiser Aluminum*, 684 F.2d 776, 780 (11th Cir.1982). Under the traditional rule of contract construction known as *contra proferentem*, ambiguities in contracts, especially those found in exclusionary provisions, are to be construed against the insurer as drafter of the policy and in favor of the insured. *See National Union Fire Ins. Co. of Pa. v. Carib Aviation, Inc.*, 759 F.2d 873, 875 (11th Cir.1985). After reviewing the term "commercial aircraft," as it appears in the context of the applicable policy, the Court finds that the phrase is not ambiguous.[2]

In support of its contention that the term is ambiguous, Plaintiff relies upon *Airmanship v. U.S. Aviation Underwriters*, 559 So.2d 89 (Fla. 3rd DCA 1990), a case wherein the Third District Court of Appeal interpreted the somewhat related phrase "commercial aviation." In *Airmanship*, the court held that the phrase "commercial aviation" was reasonably susceptible to more than one interpretation. Specifically, the Court found that "commercial aviation" could be interpreted to include such activities as leasing an aircraft, piloting an aircraft and operating an aircraft to transport passengers and freight. This Court agrees that, under the facts presented in that case, the phrase "commercial aviation" was reasonably susceptible to

more than one interpretation. "Commercial aviation" is susceptible to differing interpretations because it is a much broader term which encompasses a wider range of activities. Consequently, the Court does not find *Airmanship* to be particularly persuasive as far as demonstrating that the term "commercial aircraft" is susceptible to more than one interpretation.

As the Plaintiff correctly pointed out at oral argument, the relevant inquiry involves a determination of what a particular phrase is ordinarily understood to mean by the average lay person. *Certain British Underwriters v. Jet Charter*, 789 F.2d 1534, 1536 (11th Cir.1986) (When a policy provision is not defined, common everyday usage determines its meaning); *See also Nateman v. Hartford Casualty Insurance Co.*, 544 So.2d 1026, 1028 (3rd DCA), *rev. denied*, 553 So.2d 1166 (Fla.1989). The Court is of the opinion that, when a reasonable person thinks of a commercial aircraft, they envision an aircraft used to transport passengers or property for hire. For example, one would think of a commercial aircraft as one that is owned and operated by a common carrier, such as Delta Airlines, and utilized to transport passengers between fixed points of origin and destination in exchange for compensation. Alternatively, one might envision an aircraft that is used to transport property for profit, such as one operated by United Parcel Service. The cases cited by the Defendant support this interpretation of the phrase. *See In re Woods Corp.*, 531 P.2d 1381, 1385 (Okla.1975) ("commercial airlines" re-

---

2. Because this is an ERISA case, the question arises as to whether the normal rules of contract interpretation are applicable here. The Eleventh Circuit Court of Appeals has not decided how ERISA impacts the traditional rules of contract construction, and a conflict exists among the several circuits which have decided this issue. In *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 581, 112 L.Ed.2d 587 (1991), the Ninth Circuit held that, if a term in an insurance contract is ambiguous, that term must be construed against the insurer even if the insurance contract is an employee welfare benefit plan governed by ERISA. *See also Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98, 107 (2d Cir.1991). Shortly thereafter, in *Brewer v. Lincoln National Life*

*Ins. Co.*, 921 F.2d 150, 153–54 & n. 2 (8th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991), the Eighth Circuit rejected the *Kunin* approach and held that, in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court abandoned the traditional rule that ambiguous contracts are to be construed against the insurer and decided that such policies are to be construed without deferring to either party's interpretation. The issue of how ERISA impacts the traditional rules of contract construction is relevant, however, only in situations where the Court has found that a particular term is ambiguous. In this case, the question does not need to be resolved because the Court has concluded that "commercial aircraft" is not an ambiguous term.

fers to "airlines which carry passengers and or property for hire"); *Burns v. Mutual Benefit Life Insurance Co.*, 79 F.Supp. 847, 853 (W.D.Mich.1948), *cert. denied*, 339 U.S. 947, 70 S.Ct. 802, 94 L.Ed. 1362 (1950) ("commercial flights" means "fare-paying flights on commercial airlines operating between definitely established airports on established airline routes").[3]

It is worth noting that, in the *Sarasota Herald–Tribune* article which accompanied Mrs. Miller's request for accidental death benefits, the Queen Air was described as a private airplane.[4] Additionally, in Miller's death certificate, the coroner listed the cause of death as a private airplane crash. Although these references are certainly not dispositive as to the definition of a commercial aircraft, they are indicative of what an average lay person perceives a commercial aircraft to be.

■ In sum, the Court concludes that the term "commercial aircraft" refers to an aircraft which is used to transport passengers or property for compensation and that the phrase cannot reasonably and fairly be interpreted to mean something different. When there is but one logical interpretation of a phrase, "ambiguities will not be inserted, by using twisted and strained reasoning, into contracts where no such ambiguities exist." *Smith v. Horace Mann Ins. Co.*, 713 F.2d 674, 676 (11th Cir.1983). *See also Ideal Mutual Ins. Co. v. C.D.I. Construction, Inc.*, 640 F.2d 654, 658 (5th Cir., Unit B 1981).

Having determined that the phrase "commercial aircraft," as set forth in the exclusionary provision of Miller's policy, is not an ambiguous term, the Court must then determine if the Queen Air falls within that definition. After thoroughly considering the factual background of this case, the Court concludes that Miller was not a passenger on board a commercial aircraft at the time of his death.

It is clear that Porter Construction did not customarily use the Queen Air to transport passengers for hire. At the time of the airplane crash, the passengers on board had not paid a fare for their flight, nor were they expected to pay in the future. Moreover, the Porter Construction airplane was not registered with the Federal Aviation Administration as a common carrier. The record indicates that Mr. Porter used the airplane to fly to various project sites in connection with his construction business and for transportation to certain personal events.[5] The intended use of the airplane on the date of the crash is consistent with these types of previous activities. The passengers were en route to Akron, Ohio, to meet some prospective clients of Porter Construction, to play a few rounds of golf and to attend the National Football League's annual Hall of Fame football game. After considering the manner in which the Queen Air was utilized, the Court concludes that the airplane on which Miller was a passenger at the time he died was not commercial in nature.[6]

3. Both parties also cited *Hutzel v. United States Aviation Underwriters, Inc.*, 132 A.D.2d 45, 522 N.Y.S.2d 301 (3d Dep't 1987), *lv. to appeal denied*, 71 N.Y.2d 804, 528 N.Y.S.2d 829, 524 N.E.2d 149 (1988). The *Hutzel* court found that the phrase "engaged in commercial aviation," as set forth in an exclusionary clause, was ambiguous. However, in its discussion of what type of activity constitutes commercial aviation, the court stated that the popular perception is "regularly scheduled airplane service complete with tickets, schedules and attendants. . . ."

4. The article also included a quote from a Porter Construction employee which indicated that the decedents decided to use the Queen Air because it would be less expensive than a commercial airline.

5. The Federal Aviation Administration ("FAA") has promulgated a more stringent set of guide-

lines for the certification and operation of aircraft in commercial aviation. The analysis of the Second Circuit in *Federal Aviation Administration v. Landy*, 705 F.2d 624, 628 (2nd Cir. 1983), supports this Court's conclusion as to what type of aircraft should be considered commercial in nature. In distinguishing between commercial and private aircraft, the Court pointed out that, when there is some doubt as to whether an operation is for compensation or hire, the test used by the FAA is "whether the carriage by air is merely incidental to the person's other business or is, in itself, a major enterprise for profit" (citing 14 C.F.R. § 1.1 defining commercial operator).

6. The Court has also considered Plaintiff's argument that the Queen Air should be considered a commercial aircraft because the pilot had a commercial rating. This argument is unpersua-

## CONCLUSION

Plaintiff has failed to establish entitlement to the accidental death benefits arising under Nelson J. Miller's insurance policy with Principal Mutual. The term "commercial aircraft," as used in the insurance contract, is not ambiguous because it is not fairly and reasonably susceptible to more than one meaning. The Court has concluded that the term "commercial aircraft" refers to an aircraft that is used to transport passengers or property for compensation. Plaintiff is ineligible for the additional benefits because the decedent was not a passenger on board a commercial aircraft at the time of his death. Therefore, in accordance with the foregoing discussion, Plaintiff's motion for summary judgment must be denied and Defendant's motion for summary judgment must be granted.

Accordingly, it is ORDERED AND ADJUDGED that:

1. The motion for summary judgment (Dkt. # 24), filed by the Plaintiff, is hereby DENIED.

2. The motion for summary judgment (Dkt. # 19), filed by the Defendant, is hereby GRANTED.

3. The Clerk is *directed* to enter judgment in favor of the Defendant, Principal Mutual Life Insurance Company, and against the Plaintiff, the Estate of Nelson J. Miller.

DONE AND ORDERED.

sive inasmuch as the pilot's rating merely indicates that he had the capability to fly a commercial aircraft if he chose to do so.