Sohngen, J.
 

 There are two questions raised in this case:
 

 1. Is the phrase, “regularly scheduled passenger flight of a commercial aircraft,” as used in the policy of life insurance, aAibiguous ?
 

 2. Does the incontestability provision in a policy of life insurance act as a limitation or invalidation of an aviation ' rider, where such incontestability provision does not include the aviation rider as an exception to such provision?
 

 The policy here in question contains a rider, attached thereto, designated “War and Aviation Clause.” Among other things, the rider provides that the liability of the insurer is limited to a return of the premiums if the insured died “as a result of operating or riding
 
 *463
 
 in any kind of aircraft,
 
 except as a passenger on a regularly scheduled passenger flight of a commercial
 
 aircraft.” (Italics ours.) It is conceded that the plane was a commercial aircraft, so all that it is necessary for us to consider is the interpretation of the words “except as a passenger on a regularly scheduled passenger flight.” It was claimed by the plaintiff and so found by the Court of Appeals that such phrase is subject to different interpretations and thus ambiguous.
 

 The law of Ohio is settled that policies of insurance which are prepared by the insurance company and which are-reasonably open to different interpretations will be construed most favorably to the insured.
 
 Great American Mutual Indemnity Co.
 
 v.
 
 Jones,
 
 111 Ohio St., 84, 144 N. E., 596, 35 A. L. R., 1023.
 

 It is elementary that an insurance policy is a contract, and in the construction thereof, just as in other contracts, words therein should be given their usual and ordinarily accepted meaning. In determining what was in the minds of the parties when they entered into a contract containing the language to be construed, courts must consider the meaning as applied to the subject matter with regard to which the language was used, and with reference to the object to be accomplished by the contracting parties.
 

 In the case of
 
 New Amsterdam Casualty Co.
 
 v.
 
 Johnson, Admx.,
 
 91 Ohio St., 155, 110 N. E., 475, L. R. A. 1916B, 1018, this court, in construing a contract of insurance, stated that the everyday meaning which must have been plainly in the minds of the contracting parties must be given to the language used in the contract, not a strained, unnatural and forced meaning.
 

 In the instant case, the term “regularly scheduled passenger flight” relates to the subject of travel and transportation. In the opinion of this court, the usual and ordinarily accepted meaning of the language in question, as applied to the subject of travel and trans
 
 *464
 
 portation and with reference to the object to be accomplished by the parties, means .trips regularly scheduled as to time of departure and arrival by commercial airlines operating between definitely established airports.
 

 Taking into consideration the clause in the rider, and applying the everyday, usual and ordinarily accepted meaning to the phrase “except as a passenger on a regularly scheduled passenger flight” therein, we are of the opinion that such phrase is not ambiguous in its meaning.
 

 The policy contains an incontestability clause as follows:
 

 “This policy shall be incontestable, except for default in payment of premium for more than thirty-one days, after it has been in force during the lifetime of the insured for two years from the date of issue hereof. ’ ’
 

 The sécond question concerns the effect of this incontestability provision on the aviation rider. It is contended that the incontestability and aviation provisions are inconsistent, and that in construing them together, the incontestability provision must prevail with the result that the aviation rider is waived after two years. This argument is based on the theory that the standard policy forms set out by Sections 9412 to 9417, inclusive, General Code, apply to'this policy. However, the policy in the instant case is not one of the standard-form policies set out in such sections.
 

 Sections 9410 through 9426, General Code, pertain, to standard forms of life insurance policies. Section 9420, General Code, as amended September 7, 1939, •effective more than two years prior to the issuance of this policy, authorizes companies to use their own forms, but provides that in such event they must contain certain minimum provisions. Paragraph 3 of that ■section reads as follows:
 

 
 *465
 
 “ (3) A provision that the policy and the application therefor, a copy of which must be endorsed thereon, shall constitute the entire contract between the parties and shall be incontestable' after it has been in force during the lifetime of the insured for a period of not more than two years from its date, except for non-payment of premiums and except for violations of the conditions, if any, relating to naval or military service in time of war or to aeronautics and, except also, at the option of the company, with respect to provisions relative to benefits in the event of total and permanent disability and provisions which grant additional insurance specifically against death by accident or by accidental means. ’ ’
 

 This policy was adopted by the company pursuant to Section 9420, General Code.
 

 With respect to the contention that because the defendant did not specifically include in the incontestability clause the right to contest the policy under the rider, but limited such right to contest only to the failure of the assured to pay premiums, the defendant thereby waived its right to rely upon the ‘ ‘ exclusion of risk” rider after two years had elapsed.
 
 Bernier
 
 v.
 
 Pacific Mutual Life Ins. Co. of California,
 
 173 La., 1078, 139 So., 629, 88 A. L. R., 765, was cited in support of such contention.
 

 We cannot agree with that contention.
 

 An incontestability provision in a policy of insurance and an aviation clause must be differentiated. The former is a limitation as to the time within which and grounds on which the validity of a policy may be questioned, while the latter is an exclusion of a certain risk from the coverage of the policy.
 

 In 3 Williston on Contracts (Rev. Ed.), 2280, Section 811, it is stated:
 

 “In determining whether the incontestable clause is applicable to a given situation a distinction should
 
 *466
 
 be noted between matters of defense going to the invalidity of the whole policy on the one hand, and on the other hand provisions relating to excepted risks. The incontestable clause is intended not to enlarge the scope of the insurer’s promise so as to include liability for death due to causes which are excluded either by express terms of the policy or by implication of law, but to make certain the enforceability of the promise as set out in the policy. Properly interpreted, therefore, the incontestable clause does not exclude a defense based on a suicide clause. Such a defense does not contest the validity of the policy * * *; it supports the policy, but asserts that by its terms the insurer is not bound to pay where death is caused by suicide.”
 

 ■ To the same effect are the following cases:
 
 Perilstein
 
 v.
 
 Prudential Ins. Co. of America
 
 (1943), 345 Pa., 604, 29 A. (2d), 487;
 
 In re Metropolitan Life Ins. Co.
 
 (1930), 252 N. Y., 449, 169 N. E., 642;
 
 Jolley
 
 v.
 
 Jefferson Standard Life Ins. Co.
 
 (1930), 199 N. C., 269, 154 S. E., 400; and
 
 Pacific Mutual Life Ins. Co. of California
 
 v.
 
 Fishback
 
 (1933), 171 Wash., 244, 17 P. (2d), 841.
 

 In the
 
 Bernier case, supra,
 
 the policy contained exclusions relating -to military and naval service, as well as to aeronautics, but the insurer in the incontestability clause included the excepted risks relating to military and naval service, but did not include the excepted risk relating to aeronautics, and the court inferentially held that the policy was ambiguous; that “if the'insurance company intended to except also from the incontestability clause, a violation of the conditions relating to aerial navigation, that exception, like the exception of violation of the conditions relating to military or naval service in time of war, should have been expressed”; and that for that reason the policy was not contestable on the ground of violation of the conditions relating to aerial navigation.
 

 There is no such ambiguity in the instant case.
 

 
 *467
 
 The plaintiff malees the contention also that defendant failed to offer any evidence or show in any manner that the proximate cause of the death of the insured was an excluded risk under the terms of the insurance policy. The risk excluded was death “as a result of operating or riding in any kind of aircraft, except as a passenger on a regularly scheduled passenger flight of a commercial aircraft.”
 

 The insured’s death resulted from his riding in this airplane. It seems obvious, therefore, that the death of the assured occurred as the result of the risk of riding in this airplane.
 

 Therefore, the judgment of the Court of Appeals is reversed and final judgment is rendered for the defendant.
 

 Judgment reversed.
 

 Weygandt, C. J., Turner, Matthias and Bell, JJ., concur.
 

 Hart and Zimmerman, JJ., not participating.