# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-3444

———————

Jean McDaniel,      &ast;

        &ast;

      Appellant,      &ast;    Appeal from the United States

        &ast;    District Court for the

     v.         &ast;    Eastern District of Missouri

        &ast;

Medical Life Insurance Company,    &ast;

        &ast;

      Appellee.       &ast;

———————

Submitted:  September 15, 1999

Filed:  November 3, 1999

———————

Before RICHARD S. ARNOLD, FLOYD R. GIBSON, and LOKEN, Circuit Judges.

———————

FLOYD R. GIBSON, Circuit Judge.

Jean McDaniel appeals from the district court's[1] order granting Medical Life Insurance Company's (MedLife) motion for summary judgment on her claim, under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, for death benefits under her late husband's life insurance policy.  The district

---

[1]The HONORABLE DAVID D. NOCE, United States Magistrate Judge for the Eastern District of Missouri.

court found that McDaniel failed to prove that her decedent, Dennis McDaniel, was eligible for coverage under the terms of MedLife's group policy, which defines eligible employees as those who devote at least thirty hours per week to the business of the employer. For the reasons set forth below, we affirm the decision of the district court.

## I.    BACKGROUND

MedLife is a subsidiary of Blue Cross/Blue Shield of Ohio. In 1986, MedLife issued a group life insurance policy to Spiralcool Company of Bellevue, Ohio. The policy provided Spiralcool employees with benefits for ordinary death, accidental death, dismemberment, loss of sight, and disability. In 1989, Spiralcool Company's subsidiary, CEC Designs, Inc. of Brecksville, Ohio, was added to the policy group as a policyholder-employer.

In July of 1990, decedent Dennis McDaniel (hereinafter decedent) acquired CEC Designs, Inc. and became the sole shareholder and proprietor of the company. Decedent was the chief executive officer of CEC Designs and several other unrelated business enterprises. Decedent ran his business interests from his office in St. Louis County, Missouri.

Decedent enrolled in MedLife's group life insurance plan on August 8, 1990. MedLife issued a certificate of insurance to CEC Designs shortly thereafter, including decedent as a covered individual under the group policy. According to the terms of the policy, decedent was eligible for basic life insurance coverage in the amount of "1 X Annual Salary to a Maximum of $100,000," and an additional accidental death benefit in the amount of $100,000. J. A. at 112, 173.

Decedent died on January 26, 1995, as the result of an accidental drowning. As the designated beneficiary, McDaniel submitted a claim for the proceeds of decedent's insurance policy. On May 17, 1995, the group plan administrator for CEC Designs

filed a death claim form with MedLife and recommended payment of the claim. MedLife denied the claim on October 31, 1995, on the grounds that decedent was not eligible for life insurance benefits under the policy because he was not "a person employed on a full-time basis who devotes not less than 30 hours per week to the business of [CEC Designs]." J.A. at 45.

McDaniel filed suit for the recovery of death benefits under the life insurance policy pursuant to 29 U.S.C. §1132(a)(1)(B) (1994).[2] McDaniel alleged that MedLife could not contest decedent's eligibility for coverage due to the incontestability clause contained in the group policy. Agreeing that no genuine issue of material fact existed, the parties filed cross-motions for summary judgment. The district court held that, as McDaniel failed to meet her burden by showing the existence of substantial evidence that her decedent was a person covered by the MedLife policy, MedLife was entitled to judgment as a matter of law.

## II.   DISCUSSION

We review the district court's grant of summary judgment de novo. See Blaske v. Unum Life Ins. Co. of America, 131 F.3d 763, 764 (8th Cir. 1997). We will affirm the district court only if we find that no genuine issue of material fact exists and that MedLife is entitled to judgment as a matter of law. See id.

Due to the pleadings of the parties below, this case presents a fairly narrow issue on appeal: whether an incontestability clause in a group life insurance policy bars the insurer from offering, as a defense to nonpayment, the ineligibility of the decedent. In their cross-motions for summary judgment, both parties agree that the decedent did not

---

[2]McDaniel also invoked diversity jurisdiction pursuant to 28 U.S.C. § 1332 (1994).

work the thirty hours per week necessary to be eligible for group life insurance coverage under the MedLife policy. The incontestability clause of the policy states:

> MedLife will not use any incorrect statements by a Covered Person about their insurability to void coverage or deny any claim for coverage that has been in force for a period of 2 years during a Covered Person's lifetime and is contained in a written signed statement. This Policy will be incontestable after 2 years from its issue date except for nonpayment of premiums.

J.A. at 46. The policy further defines a "Covered Person" as "an Employee covered under this policy." Id. at 45. "Employee" is defined as:

> a person employed on a full-time basis who devotes not less than 30 hours per week to the business of the employer and who (except in the case of a proprietor or partner) is paid for such services by salary or wages. Such employment must be at the principle [sic] place of business of the employer or at an established branch office.

Id.

On appeal, McDaniel argues that the thirty-hour minimum work week requirement contained in MedLife's policy relates to the validity of the contract and not to policy coverage. McDaniel argues that because MedLife issued a certificate of insurance that included decedent as a "Covered Person," MedLife is barred from asserting a defense based on ineligibility of the decedent.

MedLife counters that the incontestability clause is inapplicable to this circumstance because MedLife has not challenged the validity of the group policy itself nor the veracity of any representations made by the decedent in his policy application. MedLife argues that, as a matter of law, an incontestability clause does not bar an insurer's defense based upon ineligibility. We agree.

–4–

We first address which law controls the disposition of this case. This case is in federal court because the life insurance policy plan at issue is regulated by ERISA, a federal statute. See 28 U.S.C. § 1331 (1994) (federal question jurisdiction). McDaniel brought her suit under the ERISA provision providing for judicial review of the denial or refusal to pay plan benefits. See 29 U.S.C. § 1132(a)(1)(B). As no particular ERISA section governs the effect of incontestability clauses, we are obliged to look to federal common law in our consideration of this case. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987); Reid v. Connecticut General Life Ins. Co., 17 F.3d 1092, 1098 (8th Cir. 1994) ("[W]here there is no federal statutory law to apply in ERISA litigation, 'federal common law,' not state law, should be applied.").

Although federal common law is applicable to this case, we may look to state law for guidance, provided state law does not conflict with ERISA or its underlying policies. See Mohamed v. Kerr, 53 F.3d 911, 913 (8th Cir. 1995). In considering the choice of law issue, the district court looked to both Missouri and Ohio law.[3] The district court found Missouri and Ohio law consistent regarding the effect of incontestability clauses in life insurance policies. While we believe that Ohio rather

---

[3]The district court determined that both Ohio and Missouri have significant contacts with the parties and insurance contract in this case. Ohio's contacts include the location of CEC Designs' and Spiralcool's places of business in Ohio, MedLife's status as an Ohio corporation, and the fact that the policy was entered into in Ohio. Missouri 's contact is as the domicile of the decedent and as the state from which the decedent ran CEC Designs.

than Missouri law most likely governs this action,[4] we agree with the district court's determination that the same result is compelled under the law of either state.

Although Ohio state law has long required all life insurance policies issued in Ohio, or issued by a life insurance company organized under Ohio law, to contain an incontestability provision, see Ohio Rev. Code Ann. § 3915.05(C) (Banks-Baldwin 1999), Ohio courts have never squarely addressed the issue before us. Nonetheless, upon review of the most pertinent Ohio cases concerning the effect of incontestability clauses, we conclude that Ohio state law does not prevent an insurer from defending its nonpayment of life insurance benefits on the grounds that the decedent was never eligible for coverage under the terms of the policy.

Both parties rely on what they deem to be the most relevant Ohio case regarding incontestability clauses: McBride v. Prudential Ins. Co. of America, 72 N.E.2d 98

---

[4]The district court applied the Restatement (Second) of Conflict of Laws' "most significant contacts" approach in determining that both Missouri and Ohio law applied to this case. We note, however, that the Missouri Supreme Court expressly rejected the Restatement's "most significant contacts" approach and retained a lex loci contractus (law of the place where the contract was made) analysis in Miller v. Home Ins. Co., 605 S.W.2d 778, 780 (Mo. banc 1980). Nonetheless, confusion exists as to whether Miller still controls Missouri choice of law rules regarding insurance contracts. Compare Nash by Nash v. Kriv Aja Beechbrook Corp., 866 F.2d 1053, 1056 (8th Cir. 1989) (acknowledging that the Miller court declined to adopt the "most significant contacts" test) and England v. John Alden Life Ins. Co., 846 F. Supp 798, 802-03 (W.D. Mo. 1994) (holding that Missouri applies the law of the state wherein the contract was entered), with Baxter Intern., Inc. v. Morris, 976 F.2d 1189, 1195 (8th Cir. 1992) (stating without discussion that Missouri applies the Restatement (Second)'s choice of law provisions), and Buck v. American States Life Ins. Co., 723 F. Supp. 155, 158-59 (E.D. Mo. 1989) (finding that Missouri courts apply the Restatement's "most significant contacts" approach). However, as our disposition of this case does not require that we determine which line of cases is correct regarding Missouri choice of law rules, we leave that decision for another day.

–6–

(Ohio 1947).  In McBride, the Ohio Supreme Court ruled that the insurer could refuse payment of life insurance benefits to a decedent's beneficiary  when the decedent died as a result of an airplane crash and the policy contained an incontestability clause and an aviation exclusion.   The incontestability clause stated, "[t]his policy shall be incontestable, except for default in payment of premium for more than thirty-one days, after it has been in force during the lifetime of the insured for two years from the date of issue hereof."  The policy's aviation exclusion provided that the insurer's liability was limited to the return of premiums if the insured died "as a result of operating or riding in any kind of aircraft, *except as a passenger on a regularly scheduled passenger flight of a commercial aircraft*."  Id. at 99, 100 (emphasis in original).  The insured died in an airplane crash while on a non-regularly scheduled passenger flight.  In explaining its holding, the court differentiated between the incontestability clause and the aviation exclusion.  "The former is a limitation as to the time within which and grounds on which the validity of a policy may be questioned, while the latter is an exclusion of a certain risk from the coverage of the policy."  Id. at 100.

McDaniel argues that McBride supports her position in that the Ohio Supreme Court found for the insurer in McBride because the risk of aviation death was specifically excluded by the policy and therefore the insurer was not contesting the validity of the policy itself.  McDaniel asserts, that unlike the insurer in McBride, Medlife is attempting to challenge the validity of her decedent's policy.  This challenge, McDaniel argues, is barred by the policy's incontestability clause.

MedLife agrees that McBride prohibits an insurer from defending its non-payment of benefits on the basis that the entire policy is invalid.  However, MedLife asserts it is not denying the policy's validity, but is rather claiming that the death of an individual who worked less than thirty hours per week is a risk that is not covered by the terms of the policy.

While we agree with both parties' reading of <u>McBride</u>, we find the language contained in an earlier Ohio Court of Appeals decision to be more germane to the specific issue raised by this case. In <u>John Hancock Mut. Life Ins. Co. v. Hicks</u>, 183 N.E. 93 (Ohio Ct. App. 1931), the court considered whether an incontestability clause barred an insurer from requiring proof from the insured that a disabling disease was contracted subsequent to the issuance of a permanent disability policy. The policy at issue in <u>Hicks</u> provided that the insurer would pay disability benefits "[i]f . . . the insured . . . shall become wholly and permanently disabled by . . . disease . . . contracted after the date hereof." <u>Id</u>. at 95. The policy's incontestability clause stated: "This policy . . . shall be incontestable after it has been in force during the lifetime of the insured for a period of one year from its date of issue except for non-payment of premium." <u>Id</u>. at 94. The trial court held that the incontestability clause contained in the policy prevented the insurer from contesting any claim of the plaintiff on any basis except that of nonpayment of premiums. <u>See id</u>. The Ohio Court of Appeals disagreed with the trial court's reasoning, stating:

> The incontestable clause only prevents the contest by the company respecting any liability incurred by it by the terms of the contract, and does not relieve the plaintiff in the first instance of establishing its right to recover under the specific language of the policy. . . . [T]he company by the incontestable clause has not waived the necessity of allegation and proof that the injury, loss, or risk claimed is the subject of the contract.

<u>Id</u>. at 95. The court therefore reversed and remanded the case to the trial court with instructions that the claimant be allowed to present evidence that he was eligible for disability benefits by the terms of the policy and that the insurer be allowed to rebut the evidence presented.

In light of this Ohio case law, we agree with the district court that McDaniel had the burden of proving that her decedent was eligible for life insurance benefits "under the specific language of the policy." <u>Hicks</u>, 183 N.E. at 95. The specific policy

–8–

language provides that the incontestability clause applies to bar the insurer from contesting coverage or denying a claim by a Covered Person. By McDaniel's own admission, the decedent never met the definition of a Covered Person under the terms of the policy, i.e. an employee who devotes not less than 30 hours per week to the business of CEC Designs.[5]

Implicit in our decision is our belief that the issue of eligibility relates to the risk assumed by the insurer under the terms of the policy. See, e.g., Crawford v. Equitable Life Assurance Society of the United States, 305 N.E.2d 144, 150 (Ill. 1973)("[T]he question of eligibility is one which relates to the risk assumed and . . . a defense based on lack of eligibility is . . . not foreclosed by an incontestability clause."). We reject McDaniel's urging that we follow the viewpoint adopted by the court in Simpson v. Phoenix Mutual Life Ins. Co., 247 N.E.2d 655 (N.Y. 1969). In Simpson, the New York Court of Appeals held that ineligibility cannot form the basis for denial of a claim after the contestability period has passed because the question of eligibility is one which is discoverable by the insurer. Id. at 657-58. We believe that the reasoning of the Simpson court places too great a burden on the insurer by effectively requiring the insurer to assess the eligibility of each enrollee on an on-going basis during the period of time that the policy is contestable. We agree with the insurer's contention, set forth in Crawford, that placing such a burden on the insurer would involve substantial expense, duplicative recordkeeping, and is not in accordance with the realities of modern group life insurance policies, in which it is the employer who usually serves as

---

[5]We emphasize the importance to our disposition of this case the fact that McDaniel at no point claimed her decedent was a "Covered Person" as that term is defined in the policy. Had McDaniel made such a claim she would certainly be entitled, indeed required, to put forth evidence to support the claim.

the plan administrator and makes employee eligibility determinations.[6] See Crawford, 305 N.E.2d at 151.

Accordingly, because we find McDaniel has failed to meet her burden of establishing that her decedent was a person covered by the terms of the policy, we affirm the judgment of the district court.

## III.  CONCLUSION

For the reasons set forth above, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[6]As the MedLife policy was administered by CEC Designs, we find no merit in McDaniel's contention that MedLife's issuance of a certificate of insurance which included her decedent as a "Covered Person," somehow estops MedLife from denying the decedent's eligibility.  MedLife was relying on the representations made by CEC Designs regarding decedent's eligibility.  Thus, the fact that a certificate of insurance was issued in decedent's name does not affect our decision in this case.