86 F.Supp.2d 921 (2000)
COMMERCIAL UNION ASSURANCE CO. OF AUSTRALIA, LIMITED, MELBOURNE; G.R.E. Insurance Ltd., Melbourne; and Associated Marine Insurers Agents Pty., Ltd., Plaintiffs,
v.
HARTFORD FIRE INSURANCE CO., Defendant.
No. 4:97 CV 2264 DDN.
United States District Court, E.D. Missouri, Eastern Division.
February 11, 2000.
*922 *923 Kurt S. Odenwald, Guilfoil and Petzall, St. Louis, MO, for plaintiffs.
John S. Sandberg, Jonathan H. Garside, Sandberg and Phoenix, St. Louis, MO, for defendant.

OPINION
NOCE, United States Magistrate Judge.
This action is before the Court following a non-jury trial upon a stipulated record. The parties consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).
This action involves the issue of whether defendant's insurance policy covered damage to a shipment of helicopter parts during shipment. Plaintiffs Commercial Union Assurance Co. of Australia, Ltd., Melbourne; Associated Marine Insurers Agents Pty. Ltd.; and G.R.E. Insurance Ltd., Melbourne, claim that defendant Hartford Fire Insurance Co. is liable to them for contribution on the theory of double insurance. Plaintiffs seek monetary damages from Hartford, prejudgment interest from May 26, 1988, postjudgment interest, costs, and any other relief the Court may deem proper. Hartford alleges that the policy under which plaintiffs claim contribution was canceled; that the action is for subrogation, not contribution; and that the statute of limitations on the subrogation claim has run.
The Court has subject matter jurisdiction over this action, based upon the parties' diversity of citizenship and the amount in controversy. 28 U.S.C. § 1332. In such a case, the Court must apply the rules of decision that the state courts of Missouri would select. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Birnstill v. Home Sav. of Am., 907 F.2d 795, 797 (8th Cir.1990). Missouri's choice of law standard in a case such as this is not entirely definite. Missouri courts have been held to follow the principal contacts  most significant relationship rule of § 188 of the Restatement (Second) of Conflicts of Law for choice of law determinations dealing *924 with contracts. Bonner v. Automobile Club Inter-Insurance Exchange, 899 S.W.2d 925, 929 (Mo.Ct.App.1995); Frost v. Liberty Mut. Ins. Co., 828 S.W.2d 915, 920 (Mo.Ct.App.1992); see also Baxter Int'l, Inc. v. Morris, 976 F.2d 1189, 1195 (8th Cir.1992) (stating without discussion that Missouri applies the Restatement (Second)' s choice of law provisions).[1] The following Restatement factors are relevant to the most significant relationship doctrine:
(1) the place of the contract;
(2) the place of negotiation of the contract;
(3) the place of performance;
(4) the location of the subject matter of the dispute; and
(5) the domicile, residence, nationality, place of incorporation and place of business of the parties.
Frost, 828 S.W.2d at 920.
After considering these factors, the Court concludes that the State of Missouri has the paramount interest in the litigation. Plaintiffs are Australian companies and have chosen to bring the lawsuit in Missouri. The policy at issue was issued by insurance agency Daniel and Henry Company, which is located in St. Louis, Missouri. The communication that purported to cancel the policy was a telefacsimile from Alan Edwards of the Sayfor Company in Australia to Henry Johnson of the Daniel and Henry Company in St. Louis. Finally, the location of the subject matter of the policy, the helicopter parts cargo, was at all times during the contract in transit from one location to another. The cargo shipment originated in Fort Collins, Colorado, was intended for delivery in Australia, but ended up on the east coast of the United States. The only time it was ever stationary was the short time it remained in Fort Collins, Colorado, before pickup by the transportation company. Using either the Restatement (Second) or lex loci contractus factors, Missouri courts would apply the substantive law of Missouri as the rules of decision in this case. Galvin v. McGilley Mem'l Chapels, 746 S.W.2d 588, 590-91 (Mo.Ct.App.1987).

Motion to strike affidavits.
Defendant moves to strike any reference to the written affidavits of Henry Johnson and Larry Hansen, identified in the stipulated record as Exhibits L and O. Plaintiffs had previously submitted them on the previously filed motions for summary judgment. The Court will sustain the motion to strike. Hearsay evidence is, of course, not admissible at trial under Federal Rule of Evidence 802. Without consent, trial by affidavit is prohibited. United States v. McCall, 740 F.2d 1331, 1342 (4th Cir.1984) ("the use of Neal's statement in the trial amounted to no more than the trial by affidavit the hearsay rule prevents").

FACTS
From the evidence included in the submitted record, the Court makes the following findings of fact and conclusions of law, required by Rule 52(a), Federal Rules of Civil Procedure:
1. Century Helicopters, Inc. ("Century") is located in Fort Collins, Colorado. Larry Hansen is its principal owner. Century buys, equips, and sells new and used *925 helicopters. Century procures insurance on behalf of its customers to cover loss during the transportation and storage of the aircraft. To do this, Century has a master insurance policy, issued by Hartford Fire Insurance Company through the Daniel and Henry Company agency, which generally covers Century's products. To cover specific shipments of property, Hansen secures insurance from Hartford through Daniel and Henry. This master policy allows for the issuance of certificates of airworthiness by the Federal Aviation Administration.
2. The Daniel and Henry Company is located in St. Louis, Missouri, and is an agent of Hartford Fire Insurance Company. Daniel and Henry is authorized by Hartford to bind and cancel marine insurance contracts on behalf of Hartford. Henry Johnson is employed as a broker by Daniel and Henry.
3. Alan Edwards is the owner of Sayfor Pty. Ltd., an Australian company located in Sydney, Australia. Edwards also does business under the name of A.R. & S.D. Trading, although this company name has never been registered in Australia. Edwards' business enterprises operate, buy and sell helicopters.
4. Prior to July 21, 1987, Century procured three partially disassembled helicopters for Alan Edwards and his business. The helicopters and parts were to be shipped by rail from Fort Collins, Colorado, to Long Beach, California, for ocean transport to Sydney, Australia.
5. On July 21, 1987, at Hansen's request, Daniel and Henry issued a binder of insurance on behalf of Hartford. The binder specifically identified the covered helicopters and their respective amounts of insurance as "1972 Bell 206B #834" for "160,000," "1971 Bell 206A # 617" for "160,000," "Hughes 269, #0089" for "40,000," and "Spare parts" for "20,000." The binder described the covered perils as
Storage & Transportation of three partially disassembled helicopters within the U.S. and to the warehouse of AR & S.D. Trading, Sydney Australia
See Joint Exh. M.
6. On July 30, 1987, Hartford issued its Original Marine Insurance Policy covering the helicopter parts Century sold to Alan Edwards. The policy, No. 84 C0100012 D-H-HJ-10, stated that the premium was $2508; the insureds were described as
Allan Edwards, A.R. and S.D. Trading and Century Helicopters.
The insured property was described as
1 container of disassembled helicopter parts, packed for export. Sealed in Ft. Collins, CO.
for transportation to Sydney, Australia, beginning on or about June 18, 1987. The value of the cargo was stated as $418,000 (U.S.). See Joint Exh. B.
7. On August 10 or 11, 1987, because he had not yet received a copy of the Hartford policy and was concerned about a lack of coverage, Edwards obtained a second policy of marine insurance in Australia from Associated Marine Insurers Agents Pty. Ltd. This Associated Marine policy covered the same disassembled helicopters and parts that were covered by the Hartford policy. The Associated Marine policy stated the coverage limit as $550,000 (Aus.) and named only "Sayfor Pty. Ltd." as the party insured. See Joint Exh. CC.
8. On August 11, 1987, the disassembled helicopters and parts suffered a substantial loss and damage.[2] On that date the cargo was loaded for transit from Fort Collins, Colorado, to Sydney, Australia. At approximately 2:30 p.m. on that date, the cargo was received from Century by HVH Transportation Company for delivery *926 to the Union Pacific Railroad for rail shipment to Long Beach, California. Century had the cargo packed in a sealed container. Century and Sayfor intended that the sealed container be loaded on the M.V. Willowbank in Long Beach on August 13, 1987. The cargo never reached Long Beach, but was found later on the east coast of the United States. Thereafter, the container and cargo were shipped to Denver, Colorado.
9. On August 13, 1987, at approximately 10:59 a.m. in Sydney, Australia, Edwards telefaxed a letter on Sayfor letterhead stationery to Henry Johnson at Daniel and Henry in St. Louis. Due to the fifteen hour time difference between St. Louis and Sydney, Daniel and Henry received the telefaxed letter on August 12, 1987, at approximately 7:44 p.m.[3] The letter conveyed Edwards' concern that he had not received a copy of the Hartford policy and it expressed his worry that his exposure to loss was great. He advised Johnson that he "decided to insure in Australia immediately" and that "on this occasion we do not require insurance through your company." See Exh. Q.
10. On August 13, 1987, the day after he received the faxed letter, Johnson telephoned Hansen to discuss the letter from Edwards. Hansen confirmed the telephone conversation with a letter to Johnson dated August 13, 1987, expressing his desire to keep the insurance in force. In the letter he stated that he would "take responsibility for the premium" and that he didn't "see any reason to take Alan's name off because he is the one who would be paid off anyway." See Exh. A. No affirmative action was taken by Johnson, Daniel and Henry, or Hartford to cancel the Hartford policy or to issue an amended endorsement. The premium was paid in full by Hansen and was retained by Hartford.
11. On August 14, 1987, Century informed the FAA Aircraft Registry that record ownership of the helicopters should be transferred from Century to Sayfor. At this time, Sayfor owed Century funds due under other invoices.
12. On August 30, 1987, the cargo shipment was inspected for the first time by Hansen in Denver. He observed substantial damage to it.
13. On September 8, 1987, Hansen telefaxed a notice of cargo damage to Johnson at Daniel and Henry. Thereafter, Edwards notified Associated Marine of the damage. Associated Marine then hired International Cargo Loss Prevention, Inc. ("ICLP") in Park City, Utah, to investigate and adjust Sayfor's claim under the Associated Marine policy. ICLP invited Hartford to participate in the investigation of the loss and in the settlement negotiations with the transportation intermediaries, but Hartford declined.
14. On October 5, 1987, after investigating the loss, ICLP notified Hartford of a claim by Associated Marine. Joint Exh. X.
15. On October 12, 1987, Associated Marine paid Edwards $330,000 (Aus.) in partial settlement of the insurance claim. Joint Exh. EE.
16. In November 1987, Associated Marine sold the cargo for salvage for $229,234 (U.S.).
*927 17. On or about January 8, 1988, Associated Marine settled Sayfor's claim for a total of $552,000 (Aus.).
18. On May 26, 1988, ICLP sent notices of claims on behalf of Associated Marine to Hartford and Daniel and Henry. The letters communicated ICLP's intention to settle with Hartford and to allow Hartford to pursue recovery against the transportation companies by subrogation.
19. By letter dated June 7, 1988, Hartford denied the claim by Associated Marine. Joint Exh. T.
20. Thereafter, Associated Marine subrogated to ICLP the right to sue the transportation companies. ICLP commenced suit in September 1989, in California. The litigation was not concluded until 1994 and resulted in a settlement payment of $100,000 (U.S.). During this litigation, ICLP invited Hartford to participate in the settlement negotiations but Hartford declined. Joint Exh. AA.
21. Associated Marine expended $34,281.19 to mitigate its loss.

DISCUSSION
The first issue to be decided is whether the two policies in the present case constituted double insurance. If so, plaintiffs argue they have a cause of action against Hartford for contribution. Plaintiffs argue that the policies in the instant case involve double insurance, citing the Marine Insurance Act of 1909-1966.[4] Defendant argues that the Marine Insurance Act requires the same insured to be listed on both policies to constitute double insurance. Therefore, because there are no common insureds named on the two policies, defendant maintains that plaintiffs have no right to recover from it.
For the reasons set forth above, the law of Missouri, not the Marine Insurance Act of Australia, governs this case. Under Missouri law,
[i]n order to constitute double insurance which will give one insurer the right to contribution, the policies must cover the same subject or property.... The insurance must also have been on the same interest, before contribution can be enforced between different policies.
MFA Mut. Ins. Co. v. Farmers and Merchants Ins. Co., 443 S.W.2d 220, 223 (Mo. Ct.App.1969) (quoting Appleman, Insurance Law and Practice, Vol. 6, § 3903). That case involved one insurance company, which provided a "builder's risk" policy to a contractor, seeking contribution from another insurer which had issued a "homeowner's policy" to the owner of the land. Id. at 220. That court ultimately held that "since separate interests and separate parties were insured by the two companies, contribution cannot be enforced...." Id. at 223. See also M.F.A. Mut. Ins. Co. v. Gulf Ins. Co., 445 S.W.2d 829, 833 (Mo. 1969); Hartford Accident & Indem. Co., 712 S.W.2d 722, 724-25 (Mo.Ct.App.1986) (no double insurance where the insureds were the tenant and the landlord).
In the instant case, it is undisputed that each policy covered the same property, the helicopter cargo. The policies also covered the same risk, safe delivery from Fort Collins, Colorado, to Sydney, Australia. All parties, Larry Hansen and his company, Century Helicopters, and Alan Edwards and his company Sayfor (or A.R. & S.D. Trading) desired that the cargo be delivered intact. Century procured the insurance on behalf of its customers, Alan Edwards and his company, to cover the aircraft for loss during conveyance and storage.
Hartford argues that there is no double insurance, and thus no basis for contribution, because the two policies covered different insureds. This argument is without merit. The subject policies covered the *928 same real interest insured, although known by different names. The Hartford policy insureds included Edwards and his company, A.R. and S.D. Trading; the Associated Marine policy insured was Edwards' other company, Sayfor Pty. Ltd.
In Dixey v. Federal Compress & Warehouse Co., 140 F.2d 820 (8th Cir.1944), the court held that double insurance existed where one policy's insured was obligated to pass on the insurance proceeds to the other policy's insured. 140 F.2d at 822.
In Institute for Shipboard Education v. Cigna Worldwide Ins., 821 F.Supp. 181 (S.D.N.Y.1993), aff'd, 22 F.3d 414 (2nd Cir. 1994), two policies insured two different companies. One insurance company insured the Institute for Shipboard Education ("ISE"). Id. at 185. Another insurance group insured Seawise, the owner of the vessel used by ISE. Id. at 184. Even though different companies were named insureds, that court held that double insurance existed because both policies covered the same interest, i.e., ISE's interest in maintaining the economic viability of the Semester at Sea program, and insured against the same risk, the wrongful death of an ISE employee. Id. at 188.
The facts of the case at bar are very compelling for identity of the insureds. The FAA certificates of airworthiness were transferred to Sayfor, not to Hartford policy insured A.R. & S.D. Trading. This fact indicates an identity of the interests of the companies under which Edwards conducted his business.[5] Also, the telefax message which Edwards sent to Johnson, which Hartford alleges canceled the policy, was sent on Sayfor letterhead stationery.
Thus, plaintiffs have established the existence of double insurance under Missouri law.
Hartford next argues that plaintiffs' claim is for subrogation, not contribution, and the applicable statute of limitations has run on plaintiffs' claim. The Court disagrees with both assertions.
Generally, "[t]he right of subrogation accrues to a person who has paid the debt or obligation for which another is primarily responsible." Jos. A. Bank Clothiers, Inc. v. Brodsky, 950 S.W.2d 297, 302 (Mo.Ct. App.1997). Subrogation has also been described as the substitution of one claimant for another on a lawful claim; it compels the ultimate payment of an obligation by the party who in good conscience ought to pay it. See 73 Am.Jur.2d Subrogation § 1 (1974).
On the other hand, contribution has been described by Missouri courts as follows:
Thus if several insurers agree to pay the entire loss and only one pays it, the one so paying has a right of contribution against the others for a ratable proportion of the amount paid. This is for the reason that it had paid a debt which is equally due by the other insurers.... It is universally held that contribution applies only in cases where the equities of the parties are equal. The parties must be under a common burden, obligation, or liability.... For it to arise, payment must be made by one obligated to pay the whole, as between himself and the co-obligor.
Commercial Union Ins. Co. of New York v. Farmers Mut. Fire Ins. Co. of St. Louis County, 457 S.W.2d 224, 226-27 (Mo.Ct. App.1970) (citations omitted).
Defendant argues that plaintiffs are seeking to recover their entire loss from Hartford and not a pro rata share. This, defendant maintains, renders the action one for subrogation, a right belonging to the insureds.
In their complaint, plaintiffs allege alternative claims of subrogation and contribution:

*929 Under the terms of the marine insurance policy issued by Defendant Hartford, Defendant Hartford agreed that it would remain liable for the full extent of the sum insured upon by it without right to any claim of contribution from any subsequent insurance that might be procured by the insureds. Under this clause, Defendant became the primary insurer of the cargo with respect to the insureds.
See Complaint, at ¶ 14.
To date, Defendant Hartford has refused, and continues to refuse to pay to Plaintiffs any sum as contribution for Defendant Hartford's share of the loss sustained by the insureds, or the costs of investigation and recovery of damages.
Id. at ¶ 26. In their trial brief, plaintiffs argue that "Hartford's own policy terms make it the primary insurer on the cargo, and liable on the total loss. Plaintiffs assert that they are entitled to recover the entire loss from Hartford." See Pls' Tr. Brief, filed June 25, 1999, (Doc. No. 51), at 55.[6] Plaintiffs then argue that "even in the absence of this provision, Plaintiffs are entitled to recover at a minimum, a pro rata amount of the damages alleged, or 50 percent." Id. Whether or not the facts of the case may support a claim for subrogation, the Court concludes that the facts support a claim for contribution because of the double insurance on the subject cargo. Both insurance companies had a common obligation to cover the loss fully. The Court concludes that plaintiffs have proven their entitlement to contribution by defendant.
Defendant's argument that the applicable statute of limitations bars this action is without merit. The limitations period for this case is ten years. See Mo.Rev.Stat. § 516.110.[7] A related statutory section provides:
the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment....
See Mo.Rev.Stat. § 516.100.
The Missouri Supreme Court has held that the phrase "capable of ascertainment" refers to "the fact of damage, rather than to the exact amount of damage" and that "[i]t has been construed to mean `the moment that plaintiff's damages are substantially complete.'" Business Men's Assur. Co. of Am. v. Graham, 984 S.W.2d 501, 507 (Mo. banc 1999) (quoting Lockett v. Owens-Corning Fiberglas, 808 S.W.2d 902, 907 (Mo.Ct.App.1991)). See also M & D Enterprises, Inc. v. Wolff, 923 S.W.2d 389, 394 (Mo.Ct.App.1996) ("damage is sustained and capable of ascertainment for purposes of the statute of limitations when it can be discovered or made known, even though the amount of damage is unascertained").
Defendant asserts that the damages were capable of ascertainment under Missouri law on August 30, 1987, when Hansen opened the container and observed that the cargo was substantially damaged. *930 The Court disagrees. Certainly, the occurrence of the property loss is a component of plaintiffs' cause of action for contribution. However, plaintiffs' entitlement to contribution also depends upon their payment of insurance proceeds to the insured. In this regard, the statute of limitations on a claim for contribution does not begin to run until the money has been paid or the claim settled. U.S. Fidelity & Guar. Co. v. Commercial Union Ins. Co., 943 S.W.2d 640, 642 (Mo. banc 1997); Greenstreet v. Rupert, 795 S.W.2d 539, 541-42 (Mo.Ct. App.1990); see also Federated Mut. Ins. Co. v. Gray, 475 F.Supp. 679, 681 (E.D.Mo. 1979). Plaintiff Associated Marine paid Edwards a partial settlement on or about October 12, 1987, one and a half months after the initial survey of the damage. It paid the last settlement amount on or about January 8, 1988, approximately five months after the initial survey of the damage. Thus, full settlement of Sayfor's claims by Associated Marine did not occur until January 8, 1988.
Plaintiffs commenced the instant judicial action on November 10, 1997. Plaintiffs have explained that the reason for this delay was their attempt to mitigate their damages by pursuing recovery from the transportation companies before submitting a claim to Hartford. Pl.Tr. Brief, at 27. The applicable statute of limitations would have barred any suit filed after January 8, 1998. See Mo.Rev.Stat. § 516.110. Thus, the Court concludes that the statute of limitations did not bar this action.
Defendant next argues that, even if the action is not barred, the Hartford policy was effectively canceled by Alan Edwards. Missouri law provides that "in the absence of other insurance policy requirements, `the sole requirement to effect cancellation by an insured is a definite and unconditional request for cancellation actually communicated to the Company.'" Marren v. Mutual Life Ins. Co. of New York, 84 F.3d 1068, 1070 (8th Cir.1996) (quoting Dupeck v. Union Ins. Co. of Am., 329 F.2d 548, 557 (8th Cir.1964)). There are no procedural requirements for effective cancellation in the Hartford policy. Thus, the standards set forth in Marren apply.
The Court agrees with defendant that Alan Edwards expressed a definite request for cancellation when he stated in his telefaxed letter, "on this occasion we do not require insurance through your company. ..." See Joint Exh. Q. However, under Missouri law,
[n]o contract of insurance shall be canceled or annulled by any agreement between the insurance company and the assured after the said assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void.
See Mo.Rev.Stat. § 379.195 (1991). See also Dyche v. Bostian, 361 Mo. 122, 233 S.W.2d 721, 724 (Mo. banc 1950). Another Missouri case has elaborated:
A request for cancellation does not take effect until received by the insurer, or by his agent authorized to receive the same. So, if a loss occurs before a notice or request for cancellation is received by the insurer, the liability of the company is not extinguished.
See Bassett v. Federal Kemper Ins. Co., 565 S.W.2d 823, 825 (Mo.Ct.App.1978) (quoting, Appleman, Insurance Law and Practice, § 4226, p. 660).
The cancellation letter was sent by telefacsimile by Edwards at approximately 10:59 a.m. on August 13, 1987. It reached the offices of Daniel & Henry at approximately 7:44 p.m. on August 12, 1987. The loss occurred in Colorado on August 11, 1987. Because the loss occurred on August 11, the cancellation letter received on August 12 was void.
Defendant's final argument is that plaintiffs settled with the transportation companies in violation of paragraph nine of the Hartford policy and, thus, defendant is relieved of any liability.[8] The *931 Court concludes that this paragraph does not apply to the instant case. Plaintiffs are seeking contribution; they are not claiming under the policy as the insured. In the alternative, even if paragraph nine applies to this case, plaintiffs, through ICLP, invited Hartford to participate in the investigation of the loss and in the settlement negotiations with the transportation intermediaries, but Hartford declined. Hartford's refusal to participate in the settlement proceedings disqualifies it from complaining that plaintiffs' settlements freed it from responsibility under its policy.
Plaintiffs argue that they are entitled to recover the entire loss from Hartford by virtue of paragraph eleven of the Hartford insurance policy which makes Hartford the primary insurer.[9] Under Missouri law,
[t]he doctrine of contribution finds its basis in general principles of equity and of natural justice rather than contract. It is to be applied where one is compelled to pay more than his share of a common obligation which several persons are obligated to discharge.
Commercial Union, 457 S.W.2d at 226. It is not to be gainsaid that plaintiffs provided insurance coverage for a premium and performed under their policy as they had agreed. The provisions of paragraph 11 in the Hartford policy are entirely fortuitous and unbargained for by plaintiffs. Both insurers bargained to provide full primary insurance in an amount which covered the insureds' loss. It is equitable that they each cover half the loss. Cf. U.S. Fire Ins. Co. v. Insurance Co. of N. Am., 328 F.Supp. 43, 48 (E.D.Mo.1971) (loss prorated half to insurer that covered only the loss suffered and 30% of half to the insurer that covered much more than the loss suffered), aff'd, 456 F.2d 1028 (8th Cir.1972). Therefore, plaintiffs shall recover from defendant one-half of the net loss suffered by them.
The Court having determined that plaintiffs are entitled to contribution from defendant, it becomes necessary for the Court to decide to what monetary relief plaintiffs are entitled. In their memoranda, plaintiffs argue without substantial opposition by defendant, and the Court agrees, that the $552,000.00 (Aus.) settlement they paid to Sayfor equaled $411,674.00 (U.S.); that plaintiffs paid out $34,281.19 in costs and expenses; that they obtained salvage proceeds of $229,234.00 (U.S.) for the cargo; and that they received $100,000.00 (U.S.) in settlement from the transportation companies. After computing these amounts, plaintiffs have suffered a loss of $116,721.19 (U.S.) under their policy. The Court will award plaintiffs one-half this amount, $58,360.60 as defendant's pro rata share of the insurance loss it was obligated to cover.
Plaintiffs seek prejudgment interest. The controlling Missouri statute on prejudgment interest is Mo.Rev.Stat. § 408.020.[10] Under Missouri law, where the statute applies, the award of prejudgment interest is mandatory; it is not a matter submitted to the Court's discretion. Farmland Indus., Inc. v. Frazier-Parrott Commodities, 111 F.3d 588, 592 (8th Cir. 1997); Slay Warehousing Co., Inc. v. Reliance Ins. Co., 489 F.2d 214, 215 (8th Cir. 1974); Holtmeier v. Dayani, 862 S.W.2d 391, 407 (Mo.Ct.App.1993).
Missouri courts have held that "[i]n determining whether prejudgment interest should be awarded, the significant *932 questions are whether and when the amount due became `liquidated.'" Twin River Constr. Co., Inc. v. Public Water Dist. No. 6, 653 S.W.2d 682, 695 (Mo.Ct. App.1983). A claim is liquidated when it is "fixed and determined," Schnucks Markets, Inc. v. Cassilly, 724 S.W.2d 664, 668 (Mo.Ct.App.1987), or "is readily ascertainable by computation or by determination according to a recognized standard." Ehrle v. Bank Bldg. & Equip. Corp. of Am., 530 S.W.2d 482, 496 (Mo.Ct.App. 1975); see also St. Joseph Light & Power Co. v. Zurich Ins. Co., 698 F.2d 1351, 1355 (8th Cir.1983).
However, "exact calculation is not necessary for a claim to be liquidated" and "[a] court may consider equitable principles of fairness and justice when awarding prejudgment interest." Weinberg v. Safeco Ins. Co. of Illinois, 913 S.W.2d 59, 62 (Mo.Ct.App.1995). A defendant's denial of liability or of the amount claimed does not alter the fact that the amount claimed can be sufficiently ascertainable to require the award of prejudgment interest. St. Joseph Light & Power Co., 698 F.2d at 1356. Prejudgment interest makes the claimant whole because that party has been wrongly denied the use of its money. Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir.), cert. denied, 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986).
Prejudgment interest is properly awarded in suits for insurance benefits. St. Louis County Nat'l Bank v. Maryland Cas. Co., 564 S.W.2d 920, 924 (Mo. Ct.App.1978); cf., Graham Paper Co. v. Schottco Corp., 555 F.2d 193, 196-97 (8th Cir.1977). Prejudgment interest on unpaid insurance benefits generally runs from the time the amount became due and payable under the policy. St. Louis County Nat'l Bank, 564 S.W.2d at 930. In the case at bar, ICLP made its claim on the Hartford policy by letter dated May 26, 1988. Hartford denied the claim within a reasonable time, by letter dated June 7, 1988. The Court will award plaintiffs prejudgment interest from June 7, 1988, following defendant's denial of the claim.
Prejudgment interest under § 408.020 may be simple or compound, as the Court determines when exercising equitable discretion. Buder v. Fiske, 174 F.2d 260, 274-77 (8th Cir.1949). Because plaintiffs waited a substantial period of time before they brought this judicial action, defendant shall be assessed only simple annual prejudgment interest on the amount of the judgment.
In conclusion, plaintiffs shall recover from defendant the principal sum of $58,360.60, plus simple prejudgment interest at the rate of nine percent per year from June 7, 1988, to the date of this judgment. Hereafter, defendant shall pay interest as provided by 28 U.S.C. § 1961, plus the costs of the action.
Judgment accordingly is issued herewith.
NOTES
[1] Recently, the Eighth Circuit noted that "the Missouri Supreme Court expressly rejected the Restatement's `most significant contacts' rule and retained the lex loci contractus (law of the place where the contract was made) analysis set out in Miller v. Home Ins. Co., 605 S.W.2d 778, 780 (Mo. banc 1980). Nonetheless, confusion exists as to whether Miller still controls Missouri choice of law rules regarding insurance contracts." McDaniel v. Medical Life Ins. Co., 195 F.3d 999, 1002 n. 4 (8th Cir.1999). However, this Court has pointed out that it "can only conclude from its survey of Missouri cases that the Miller decision was limited to the particular type of insurance contract at issue in that case: group insurance." See Buck v. American States Life Ins. Co., 723 F.Supp. 155, 158 n. 1 (E.D.Mo.1989). Furthermore, the court in Miller, with reference to group insurance policies, asserted that choice of law is governed by where the policy is delivered. Miller, 605 S.W.2d at 780.
[2] All parties have unequivocally alleged that the loss and damage to the helicopter parts shipment occurred on August 11, 1987, after the transportation company took possession of them. See Pls. Complaint, filed Nov. 10, 1997 (Doc. No. 1), at ¶ 15; Def. Answer, filed January 14, 1998 (Doc. No. 4), Affirmative Defense, at ¶ 1; Def. Amended Answer, filed October 14, 1998 (Doc. No. 32), Affirmative Defense, at ¶ 1.
[3] The date and time that this fax was received by Daniel and Henry is hotly disputed by the parties. Plaintiffs claim it was received on August 12 because of the date and time printed on the fax document. Defendant claims it was received on August 11 at 2:30, pursuant to Johnson's handwritten notation of that date and time at the bottom of the fax and his deposition testimony. See Deposition of Henry Johnson at 66-67. Coincidentally, Johnson's handwritten notation is the same date and time that the helicopter cargo was picked up from Century. The Court finds that the fax was received on August 12. The date and time the fax was received, as electronically printed at the top of the document ("RCV BY:Xerox TELECOPIER 7010;8-12-87 2:44PM") is more reliable than Johnson's handwritten note and his recollection at a deposition that took place in 1999, twelve years after the events at issue.
[4] The Marine Insurance Act of 1909-1966 governs Australian insurance policies. The relevant portion of the Marine Insurance Act defines double insurance as "[w]here two or more policies are effected by or on behalf of the assured on the same adventure and interest or any part thereof, and the sums insured exceed the indemnity allowed by this Act." Marine Insurance Act 1909-1966 § 38(1), Exh. DD.
[5] Hansen testified in his deposition that he dealt with Alan Edwards in locating helicopters for Edwards' business enterprises, which were variously known as Sayfor Pty., Ltd., and A.R. & S.D. Trading. See Depo. of Hansen, at 10-11.
[6] Paragraph eleven of the Hartford policy provides:

11. Other Insurance  In case the insured or others shall have effected any other ocean marine insurance directly or indirectly upon the said property insured, prior in day of date to the time of attachment of any specific risk hereunder, then the Company shall be liable only for so much as the amount of such prior insurance may be deficient toward fully covering the property hereby insured, and in this event shall return the premium upon so much of the sum by them insured as they shall be exonerated by such prior insurance. In case of any other ocean marine insurance upon the said property subsequent in day of date to the time of attachment of any specific risk hereunder, the Company shall nevertheless be liable for the full extent of the sum by them insured upon the said risk without right to claim contribution from such subsequent insurance.
See Exh. N.
[7] The relevant portion of § 516.110 provides: "Within ten years: (1) An action upon any writing, whether sealed or unsealed, for the payment of money or property...." Mo.Rev. Stat. § 516.110 (1998).
[8] Paragraph nine provides in relevant part:

It is a further condition of this insurance that if the insured or his or their assigns have entered or shall enter into any special agreement whereby any carrier ... is released from its common law or statutory liability for any loss ... the Company shall be free from liability with respect to such loss but its right to retain or recover the premium shall not be affected.
See Exh. N.
[9] See supra note 6.
[10] § 408.020 provides: "Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made."